PEOPLE v ENGELMAN

Docket No. 80624. Argued October 6, 1988 (Calendar No. 12). Decided
March 20, 1990.

Robert J. Engelman was convicted by a jury in the Lapeer Circuit
Court, Martin E. Clements, J., of third-degree criminal sexual
conduct involving a fifteen-year-old boy and pled guilty of being
an habitual offender, third offense. The Court of Appeals,
MICHAEL J. KELLY, P.J., and SAWYER and M. R. KNOBLOCK, JJ.,
affirmed in an unpublished opinion per curiam, holding that
the admission of a photograph of the defendant and a partially
nude young woman was proper to show a scheme, plan, or
system to sexually abuse minor children and that any prejudi-
cial effect did not substantially outweigh its probative value
(Docket No. 90335). The defendant appeals.

In an opinion by Justice BOYLE, joined by Chief Justice RILEY
and Justices BRICKLEY and GRIFFIN, the Supreme Court *held:*

Under the facts of this case, the photograph was improperly
admitted because the prosecution failed to establish a proper
purpose for admission under MRE 404(b).

1. Evidence of other crimes, wrongs, or acts of a defendant is
inadmissible to prove that the defendant possessed a propensity
to commit such acts. However, such evidence may be admitted
under MRE 404(b) for other purposes. Properly understood, the
list of purposes in MRE 404(b) is nonexclusive, and all are not
of equivalent importance. Some, such as intent, absence of
mistake or accident, or identity, are ultimate facts or issues to
be proven, while others, such as motive, opportunity, prepara-
tion, scheme, plan, or system, are intermediate inferences
which may tend to prove some ultimate fact or issue. In order
to admit extrinsic act evidence: there must be substantial proof
that the defendant committed the other act sought to be
introduced; there must be some special quality or circumstance
of the other act which tends to prove some issue or fact other
than the defendant's bad character; evidence of the other act

REFERENCES

Am Jur 2d, Evidence §§ 320-328, 339, 340.

See the Index to Annotations under Prior Acts or Matters; Prior
Offenses and Convictions.

must be material to the case, i.e., the issue or fact proved by the proffered evidence must be in issue or be probative of some matter in issue; and the probative value of the evidence sought to be introduced must not be outweighed by the potential for unfair prejudice to the defendant.

2. In this case, it is the criminal act itself which is the ultimate fact or issue to be proved. The defendant claims that the act never occurred. The proffered other acts evidence does not tend to prove some intermediate fact or issue, other than the defendant's bad character, which is probative of the ultimate issue. On the basis of the record, the prosecution failed to establish a proper purpose for the other acts evidence under MRE 404(b), and its admission was improper, requiring reversal of the defendant's conviction.

Justice LEVIN, joined by Justices CAVANAGH and ARCHER, concurring, stated that the Court of Appeals erred in deciding that the photograph was admissible. It was not material under MRE 404(b) because it did not tend to prove any proposition in issue; to the extent it tended to prove a common scheme, plan, or system, it still did not prove the material issue in dispute, i.e., whether the defendant committed the charged crime; and its use to bolster a witness' credibility was an insufficient basis for admission. The Court of Appeals also erred in concluding that the photograph's probative value, if any, was not substantially outweighed by its prejudicial effect.

Evidence of a defendant's prior misconduct is not admissible unless it is offered for a purpose other than to show the defendant's propensity to commit crime. The jury must decide each case solely on the basis of the evidence indicating that the defendant committed the particular act or acts charged. Evidence showing other misconduct of the defendant generally is excluded out of concern that the jury will convict on the basis of what it sees as the defendant's apparent propensity to commit particular crimes. While evidence of a defendant's prior misconduct may be admitted where it is probative of something other than the defendant's propensity to commit crime, to qualify for admission there must be some special quality or circumstance of the prior misconduct, some link between the prior misconduct and the crime charged, that tends to prove one or more of the following: the defendant's identity; absence of mistake or accident; the defendant's motive, intent, scheme, plan, or system in doing the act; or the defendant's opportunity, preparation, and knowledge. To determine when this link has been established, the prosecution must prove by substantial evidence that the defendant actually committed the prior acts

sought to be introduced, the prior misconduct must tend to prove some fact or issue other than the defendant's bad character, the fact must be material as it relates to a proposition in issue in the case, and the probative value must not be substantially outweighed by the danger of unfair prejudice.

The only requirement for establishing the link that was clearly satisfied was the showing by substantial evidence that the defendant had committed the prior act. The photograph did not tend to prove, consistent with MRE 404(b), any proposition in issue. Identity, absence of mistake or accident, motive, intent, opportunity, preparation, or knowledge were not material issues. To the extent that it permitted the inference that the defendant was the type of person who seduces young children, its admission was prohibited by MRE 404(b). To the extent that it tended to prove a common scheme, plan, or system, it still did not prove a material issue in dispute.

Proof of a common scheme or plan generally is offered to prove identity where there is ample evidence that a crime has been committed and the disputed issue is whether the accused was the person who committed it. Use of the common scheme or plan rationale should be carefully limited to avoid confusion that would result in the improper admission of other misconduct to establish only propensity to commit an offense. By contrast, in this case, whether a crime was committed is the central disputed issue. Proof of a common scheme or plan by which the defendant seduced adolescents was offered not to prove identity, but to prove that a crime had in fact been committed. To admit evidence of a defendant's other misconduct to show that a charged offense had in fact been committed is to allow the admission of propensity evidence. Nor should evidence of a common scheme or plan be admitted to bolster the credibility of a witness.

The photograph's prejudicial effect substantially outweighed any probative value. The photograph is at most minimally probative of a scheme, plan, or system, which is not an issue in itself. While it was minimally probative of whether the defendant committed the crime charged, a material issue, that probativeness results from an inference of the defendant's propensity to commit the crime charged, an inference forbidden by MRE 404(b).

Reversed.

EVIDENCE — SIMILAR ACTS.

In order to admit evidence of a defendant's other crimes, wrongs, or acts, there must be substantial proof that the defendant committed the other act sought to be introduced; there must be some special quality or circumstance of the other act which

tends to prove some issue or fact other than the defendant's
bad character; evidence of the other act must be material to
the case, i.e., the issue or fact proved by the proffered evidence
must be in issue or be probative of some matter in issue; and
the probative value of the evidence sought to be introduced
must not be outweighed by the potential for unfair prejudice to
the defendant.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *Nick O. Holowka,* Prose-
cuting Attorney, and *Donald W. Teichman* and
*Justus Scott,* Assistant Prosecuting Attorneys, for
the people.

State Appellate Defender (by *Ronald J. Bretz*)
for the defendant.

BOYLE, J. Defendant Engelman was convicted,
following a jury trial, of third-degree criminal
sexual conduct involving the sexual penetration of
a fifteen-year-old boy. MCL 750.520d(1)(a); MSA
28.788(4)(1)(a). He claims error in the admission of
a photograph showing him standing nude with a
minor female who is exposing herself. Specifically,
he contends that the photograph should have been
excluded under MRE 404(b) as improper evidence
of his character or propensity to commit the
charged offense. We agree that the photograph was
improperly admitted in this case, and that the
defendant's conviction therefore should be re-
versed.

I

At trial, the victim testified that he first met the
defendant in 1983 while visiting his cousin,[1] and
that over the next year he and the defendant
became friends. The victim frequently visited the
defendant at his home, and on several occasions

---

[1] The defendant was also charged with criminal sexual conduct
involving the victim's cousin, and was acquitted.

spent the night there.[2] The victim also indicated
that the defendant had given him "gifts" of beer,
cigarettes, candy, meals, and occasionally clothes
and money.

In July or August of 1984, the victim spent a
weekend at the defendant's home.[3] The victim
testified that after an uneventful Friday evening
the two returned to his mother's house on Satur-
day so that he could pick up a change of clothes.
On the drive back to the defendant's house that
evening, the defendant told him that he had a pair
of pants at his house which the victim could have
if they fit.[4] The defendant also spoke frequently of
"some lady friend of his in prison that wanted
some pictures of him and stuff and some other
guys . . . ." Several times during the drive the
defendant asked if he could take some pictures of
the victim for his friend. The victim stated that he
attempted to change the subject each time it was
raised. He also stated that before reaching the
defendant's house they stopped at a party store,
where the defendant purchased two six-packs of
beer for the victim and himself. The victim con-
sumed five cans of beer that evening, at least four
of them before reaching the defendant's house.

Upon arriving at the defendant's house, the
victim went into the living room to drink the beer.
A short time later he was joined by the defendant,
who had with him a pair of pants and an instant

[2] The victim testified that he visited the defendant approximately
fifty times and spent the night with defendant on at least ten
occasions. The defendant indicated that the victim had spent the
night at least "half a dozen" times.

[3] The defendant at this time was employed by a trucking firm. The
victim had on occasion expressed his desire to accompany the defen-
dant on one of his out-of-state trips. Because the defendant was never
certain when he would receive such an assignment, he suggested that
the victim spend a weekend with him, so that in the event he was
called out of town the victim could go along.

[4] The pants turned out to be the victim's.

camera. The defendant handed the pants to the victim and knelt on the floor directly in front of him. The victim testified that when he lowered his pants[5] the defendant leaned forward, placed the victim's penis in his mouth, and simultaneously photographed the act with the instant camera. The victim stated that after about ten seconds he pulled away and went to the bathroom to shower. While he was showering the defendant appeared, completely nude, drew back the shower curtain and took a second photograph of the victim.

The defendant was arrested on February 11, 1985, and charged with one count of third-degree criminal sexual conduct. During a subsequent search of the defendant's residence, the police discovered twenty-six photographs depicting the defendant and various unidentified children exposing themselves. The defendant moved to suppress all twenty-six photographs, claiming that none were relevant because the victim was not included. The defendant further claimed that if the photographs were admitted into evidence they would be "devastatingly prejudicial."[6]

In response, the prosecutor argued that the photographs were relevant to show the defendant's modus operandi, or alternatively a scheme, plan, or system whereby the defendant would befriend minor boys and girls, gain their trust over time through gifts of various items, such as clothing and alcohol, and then sexually exploit and abuse the youths, often photographing his criminal acts. The prosecutor further argued that the probative value of the photographs was not outweighed by any unfair prejudice to the defendant.

[5] The victim stated that he normally did not wear underwear and was not wearing underwear on this occasion.

[6] The defendant had also moved to suppress the photographs on the ground that they were the product of an illegal search. This motion was denied, and that ruling is not part of this appeal.

Without viewing the photographs, the trial judge stated that any photographs of the defendant individually nude or of individual nude children would not be relevant at trial, since the charge against the defendant was sexual penetration of a minor. He added:

> However, I do find relevant, photographs that contain the picture of the defendant and a minor child, assuming that they are in a state of undress. Those would be relevant. They would show to the jury that the defendant was with minor children, younger children. He had his clothes off and/or they had their clothes off and as devastating as that may be, it does show and would support scheme, plan, system, the way a person does commit a crime, even though the two victims of the charges pending are not in those photographs.[7]

Only one photograph fell within the relevancy parameters set by the trial judge. This photograph depicted the defendant standing nude in his living room holding a can of beer in one hand with his other arm around a minor female. The minor female, who also apparently was drinking beer,[8] was wearing a nightgown given to her by defendant, and had raised the nightgown to expose her body.

The defendant subsequently moved in limine to exclude this remaining photograph, arguing that it was irrelevant under MRE 401, and that if found to be relevant it was unfairly prejudicial under MRE 403. In response, the prosecutor renewed his claim that the photograph was relevant to show a scheme, plan, or system to sexually abuse minor

---

[7] The two victims referred to were the victim and his cousin, as to whom a separate charge was pending.

[8] There is a can of beer on the television set next to which the girl is standing.

children. The trial judge agreed and concluded
that, while damaging to the defendant, the photo-
graph was probative of a scheme, plan, or system
on defendant's part in committing both acts, and
that such probativeness was not outweighed by the
potential for unfair prejudice to the defendant.[9]

Following his conviction, the defendant pled
guilty to a supplemental information charging him
as a third-time habitual offender,[10] and was sen-
tenced to fifteen to thirty years imprisonment. The
Court of Appeals affirmed in an unpublished per
curiam opinion.[11] The defendant has appealed in
this Court.

## II

This case involves the admissibility of other acts
evidence under MRE 404(b). Evidence of other
crimes, wrongs, or acts of an individual is inadmis-
sible to prove a propensity to commit such acts.
MRE 404(a); *People v Hall,* 433 Mich 573, 579; 447
NW2d 580 (1989). Such evidence may be admissi-
ble, however, for other purposes under MRE
404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not
> admissible to prove the character of a person in
> order to show that he acted in conformity there-
> with. It may, however, be admissible for other
> purposes, such as proof of motive, opportunity,
> intent, preparation, scheme, plan, or system in
> doing an act, knowledge, identity, or absence of
> mistake or accident when the same is material,

[9] The defendant renewed this motion in limine just prior to trial on
September 16, 1985, but that motion also was denied.

[10] The defendant had two previous convictions in 1979 for second-
and third-degree criminal sexual conduct involving two minor fe-
males.

[11] *People v Engelman,* unpublished opinion per curiam of the Court
of Appeals, decided March 18, 1987 (Docket No. 90335).

whether such other crime, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged.[12]

The purposes listed in MRE 404(b) are not all "on the same plane." *People v Golochowicz,* 413 Mich 298, 313; 319 NW2d 518 (1982). Other acts evidence used as proof of intent, absence of mistake or accident, or identity, for example, is proof of an "ultimate" fact or issue. These ultimate facts or issues have been described as *facta probanda.*[13] On the other hand, such evidence may also be used to prove some "intermediate" inference such as motive, opportunity, preparation, scheme, plan, or system, which may in turn tend to prove some ultimate fact or issue. These intermediate inferences are described as *facta probantia.*[14]

Nor are these listed purposes the only purposes for which other acts evidence may be used. Properly understood, MRE 404(b) is a *non*exclusive list of examples of situations in which the general rule excluding character evidence, MRE 404(a), is not offended because the evidence is probative of some fact other than the defendant's criminal propensity.[15] As explained in 2 Weinstein, Evidence,

[12] MRE 404(b) is substantially similar to Federal Rule of Evidence 404(b), which provides:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[13] See Stone, *The rule of exclusion of similar fact evidence: America,* 51 Harv L R 988, 1026, n 190 (1938).

[14] *Id.*

[15] As the rule indicates, there are numerous other uses to which evidence of criminal acts may be put, and those enumerated are neither mutually exclusive nor collectively exhaustive. [McCormick, Evidence (3d ed), § 190, p 558.]

¶ 404[8], p 404-52, "[o]nly one series of evidential hypotheses is forbidden in criminal cases by Rule 404: a man who commits a crime probably has a defect of character; a man with such a defect of character is more likely . . . to have committed the act in question."[16] Put simply, the rule is inclusionary rather than exclusionary.

### A

In *People v Golochowicz, supra*, p 309, this Court articulated a set of evidentiary safeguards creating a heightened threshold of preliminary admissibility, designed to protect against the misuse of other acts evidence under MRE 404(b). First, there must be substantial proof that the defendant committed the other act sought to be introduced. Second, there must be some "special quality or circum-

---

[16] A slightly more elaborate explanation of this "forbidden" theory of relevance is undertaken by Professor Imwinkelried in his treatise, Uncharged Misconduct Evidence, § 2:18, pp 48-49:

> [T]he thrust of this theory is the use of the defendant's uncharged misconduct as circumstantial proof of conduct. More specifically, the forbidden theory rests on two inferences that pose serious legal relevance issues.
>
> [T]he first step in this theory of logical relevance is inferring the defendant's character from the defendant's prior misdeeds. Rule 404(b) refers to this step as introducing the uncharged acts "to prove the character of a person." This step poses the legal relevance danger of prejudice. In the process of deciding whether to draw the inference, the jury must focus on the type of person the defendant is. . . .
>
> The second step in this theory of logical relevance compounds the legal relevance dangers. The second step is inferring the defendant's conduct on a particular occasion from his or her subjective character. In the words of Rule 404(b), the plaintiff or prosecutor introduces the evidence of the defendant's subjective character "in order to show that he acted in conformity therewith."
>
> When the proponent uses the defendant's subjective character as proof of conduct on a particular occasion, there is a substantial danger that the jury will overestimate the probative value of the evidence.

stance" of the other act which tends to prove some issue or fact other than the defendant's bad character. Third, the other acts evidence must be material to the case, in the sense that the issue or fact proved by the proffered evidence must be in issue, or probative of some matter in issue. Finally, the probative value of the evidence sought to be introduced must not be outweighed by the potential for unfair prejudice to the defendant. See also *People v Hall, supra,* pp 579-580.

As a practical matter, however, since the other acts evidence sought to be introduced will always be used to establish some ultimate fact or issue, whether directly, through some *factum probandum,* or indirectly, through some intermediate inference or *factum probans,* it often is helpful first to identify the ultimate fact or issue the evidence is intended to prove. While there are any number of ultimate issues for which such evidence may be offered, its admission generally will be sought to prove one of three distinct matters that may arise in any criminal case:

> First, proof of the other crimes may be offered to prove that the allegedly criminal act took place; this can be called the "corpus delicti" issue. Second, the disputed evidence may be tendered to show that the accused was the actor; this is the identity issue. Third, other crimes evidence may be introduced to show that the accused had the requisite mental state. Of course, evidence of another crime may be relevant on more than one of these ultimate issues. Nevertheless, it is important to identify the appropriate ultimate issue and not to confuse the ultimate issue with some evidentiary issue. [22 Wright & Graham, Federal Practice & Procedure, § 5239, p 460.][17]

---

[17] As explained above, there may be other ultimate issues for which the other acts evidence is offered. See, e.g., *People v Oliphant,* 399

The second and third of these ultimate issues, identity and mental state (e.g., intent, lack of mistake or accident, and knowledge), are identified in the rule itself as proper purposes. The first, proof that the act was committed, is one of those purposes not expressly listed in the rule. It is, however, clearly a permissible purpose for other acts evidence:

> The prohibition of Rule 404(b) does not apply simply because the prosecutor is using uncharged misconduct to draw the ultimate inference of conduct. The prohibition applies only when that ultimate inference is coupled with the intermediate inference of the defendant's subjective character. If the prosecutor can arrive at the ultimate inference of conduct through a different intermediate inference, the prohibition is inapplicable. . . . [T]he two steps in reasoning in the forbidden theory of logical relevance trigger different probative dangers; drawing the intermediate inference raises the danger of prejudice because that step forces the jury to focus on the defendant's character while drawing the ultimate inference raises the danger that the jury will overestimate the probative value of character as a predictor of conduct. Rule 404(b) comes into play only when both probative dangers are present. If the prosecutor can develop an alternative intermediate inference, Rule 404(b) will not bar the admission of uncharged misconduct. [Imwinkelried, Uncharged Misconduct Evidence, § 4:01, p 3.]

Although the admission of other acts evidence as proof that the act was committed is permissible, courts are understandably more reluctant to admit such evidence for that purpose:

> When the prosecutor offers uncharged miscon-

---

Mich 472; 250 NW2d 443 (1976), in which the other acts evidence was offered to show lack of consent in a rape case. These three uses are identified only as "usual" uses of the other acts evidence.

duct to prove the commission of the actus reus, the
judge should very carefully scrutinize the prose-
cutor's theory of logical relevance. This is the
theory of relevance in which it is easiest for the
prosecutor to slip into improper character reason-
ing. Since the ultimate inference is conduct, this
theory places the greatest strain on the prohibi-
tion in the first sentence of Rule 404(b). The courts
are reluctant to admit uncharged misconduct to
prove the actus reus, and that reluctance is well-
founded. If the prosecutor wants to avoid Rule
404(b), the prosecutor must persuade the judge
that the prosecutor is invoking an intermediate
inference other than the defendant's subjective
character. [*Id.*, § 4:01, p 5.]

Unlike identity and mental state, *facta pro-
banda* which may be proved directly by the intro-
duction of other acts evidence, the key to the
admissibility of such evidence to prove the doing of
the act, as acknowledged in the above references,
is the existence of some intermediate fact, some
*factum probans,* established by the other act which
bridges the gap between that act and the charged
act and ensures a purpose other than the proof of
the defendant's character. As Professor Wigmore
explains:

At the outset of this entire prospectant class of
inferences, it must be noted that when the doing
of an act is the proposition to be proved there can
never be a direct inference from an act of former
conduct to the act charged; there must always be a
double step of inference of some sort, a tertium
quid. In other words, it cannot be argued: "Be-
cause A did an act last year, therefore he probably
did the act x as now charged." Human action
being infinitely varied, there is no adequate proba-
tive connection between the two. . . .

Thus, whenever resort is had to a person's past conduct or acts as the basis of inference to a subsequent act, it must always be done *intermediately, through another inference.* . . . The impulse to argue from A's former bad deed or good deed directly to his doing or not doing the bad deed charged is perhaps a natural one; but it will always be found, upon analysis of the process of reasoning, that there is involved in it a hidden intermediary step of some sort . . . . This intermediate step is always implicit and must be brought out. [1A Wigmore (Tillers rev), Evidence, § 192, p 1857. Emphasis added.]

**B**

In this case, it is the doing of the act itself which is the ultimate fact or issue to be proved by the proffered evidence. Identity is not in question here. The defendant did not argue alibi, or that the victim was mistaken concerning his identification of the defendant. Similarly, the defendant's state of mind is not in issue. He did not claim that he unintentionally fellated the victim or that he did so by accident or mistake.[18] Rather, the defendant's claim rests solely on his contention that the alleged criminal act never took place.

The question thus becomes whether the evidence offered tends to establish some intermediate inference, other than the improper inference of character, which is in turn probative of the ultimate issue in this case, the commission of the act. Or, in the language of the second leg of the *Golochowicz* test, whether there is some "special quality or

---

[18] Nor has either the prosecution or the defendant identified some other fact or issue in dispute, such as nonconsent. *People v Oliphant,* n 17 *supra.*

circumstance"[19] of the other act which tends to prove some fact or issue, other than the defendant's bad character, which is probative of that ultimate issue. We agree with the defendant that no such intermediate inference has been established in this case.[20]

### III

The Polaroid photograph admitted in this case shows the defendant standing nude with a minor female who is lifting her nightgown and exposing her body; the defendant is holding a can of beer, and there is another can of beer on the television set next to which the girl is standing. The picture was taken in the defendant's home.

The trial court accepted the photograph under MRE 404(b) as evidence that the defendant had engaged in a scheme, plan, or system in which he befriended children, gaining their trust over time through gifts of items such as clothing and alcohol, and then sexually exploited the youths while photographing them. The prosecutor had also characterized the photograph as evidence of the defendant's modus operandi and as being corroborative of the victim's testimony that defendant took a

---

[19] The four-part test established by *Golochowicz, supra,* does not serve to establish a necessary "special link" between the prior misconduct and the crime charged, as the concurring opinion states (*post,* p 230). Rather, the "special quality or circumstance," of the second requirement supplies the "link," *Golochowicz* at 310, between the charged and uncharged offenses and ensures that the evidence of the separate offense is probative of some fact other than the defendant's character. The four requirements are evidentiary safeguards to warrant proper submission into evidence.

[20] The first part of the *Golochowicz* test is clearly satisfied. There is no dispute that the defendant actually committed the other act sought to be introduced. The photograph, which shows the defendant standing nude, in his own home, with a minor female who is exposing herself, speaks for itself.

Polaroid picture of him during the fellatio. The Court of Appeals agreed with the trial court's ruling.[21]

The defendant claims that the photograph should have been excluded as irrelevant, because it showed the defendant with a teenage girl rather than a teenage boy; immaterial, because any scheme, plan, or system of the defendant in doing the act could only be material to the issues of his identity or state of mind, neither of which were controverted; and unduly prejudicial, for obvious reasons.

A

The defendant's assertion that the photograph is not relevant because it shows the defendant with a young girl, while the charged offense involved a teenage boy, is simply without merit. The defendant contends, essentially, that MRE 404(b) would permit only evidence that tended to show a common scheme, plan, or system to fellate young boys. The motion transcript, however, establishes that defendant had previously been convicted of two incidents of sexual conduct with female minors and was currently charged with two separate incidents of penetration of teenage boys. Sexual interest in minors that is not gender specific is unfortunately a sufficiently common phenomenon[22] that we cannot say as a matter of law that the proffered evidence did not tend "to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the

---

[21] *People v Engelman,* n 11 *supra,* p 2.

[22] See, e.g., *Webster's New Collegiate Dictionary* (1985), which defines "pedophilia" in terms that are not gender specific as a "sexual perversion in which children are the preferred sexual object."

evidence." MRE 401; 1 Weinstein, Evidence, ¶ 401[06], p 401-33.[23]

Defendant's contention that the photograph must be excluded as immaterial even if it does establish a scheme, plan, or system on his part in committing such acts, since neither his identity nor his state of mind are in dispute, is similarly mistaken. Clearly, such a scheme, plan, or system on the defendant's part, if properly established, would serve as the intermediate inference necessary to ensure that the evidence sought to be admitted is not character evidence, and thus not necessarily excluded under the rule.

While the focus of analysis here is on the existence of some fact or issue actually proved by the admission of the other acts evidence, and hence its relevance, the "materiality" requirement of the *Golochowicz* safeguards presents no obstacle to the admissibility of this evidence. The defendant concedes that commission of the act was a genuinely contested issue in this case; indeed, he describes it as the "only genuine controversy."

If it could be shown in this case that defendant did indeed follow a common scheme or plan in committing such acts against young children, it would defy logic to limit the use of that evidence to proof of identity or state of mind. The former will never be in dispute where the defendant and the victim know each other, and the defendant's state of mind is not an element of many of the

---

[23] As the concurrence points out, the "gender distinction" is indeed germane to an assessment of the photograph's probative value. *Post,* p 241, n 20. We question, however, its assertion that whether a man who has appeared nude in a photograph with a partially nude young girl is more likely to have committed the charged act with this minor victim is "a question for the social scientists . . . ." *Id.,* p 241, n 20. On the contrary, it is in this context clearly a question for the trial judge alone, who must rely in making his determination on whatever resources are available, including such matters of "common knowledge."

offenses set forth in the criminal sexual conduct act. Yet, in many cases such evidence might be not only relevant to the determination of defendant's guilt or innocence, but also material in the sense required by *Golochowicz,* as proof that the act was committed. As explained in 2 Wigmore (Chadbourn rev), Evidence, § 304, p 249, "[w]hen the very doing of the act charged is yet to be proved, one of the evidential facts receivable is the person's design or plan to do it . . . ."[24]

We agree with the defendant, however, that the photograph was in this case inadmissible as evidence of the defendant's scheme, plan, or system in doing the charged act, since in our view the record in this case does not establish a "true plan" on defendant's part. This is not a case in which the evidence of the uncharged act shows "that the defendant in fact and in mind formed a plan including the charged and uncharged crimes as stages in the plan's execution." Imwinkelried, § 3:21, p 53. The defendant in this case did not have a single plan which encompassed both of these acts, and it does not appear on this record that the acts were in different stages of the same, comprehensive plan.[25] The trial court, therefore, erred in admitting the photograph, on this record, as evidence of the defendant's scheme, plan, or system in committing the act.

[24] See also 22 Wright & Graham, Federal Practice & Procedure, § 5244, p 502 "[E]vidence of a plan may also be admissible to show the doing of the criminal act." As the authors of that treatise explain, proof of a plan "need not be sufficient [by itself] to prove the act in order to be admissible to support other evidence that the crime was committed." *Id.,* n 27. Here, there was also the testimony of the victim.

[25] See 1 Wharton, Criminal Evidence (14th ed), § 186, pp 786-787, stating that evidence "is admissible when it tends to establish a common plan, design, or scheme embracing a series of crimes, including the crime charged, so related to each other that proof of one tends to prove the other"; 22 Wright & Graham, Federal Practice & Procedure, § 5244, pp 499-500; 2 Weinstein, *supra,* ¶ 404[16], pp 404-118 through 404-127.

B

The prosecution also argued that the photograph was admissible to show the defendant's modus operandi, and to corroborate the victim's testimony. Again, however, we cannot find the photograph admissible for either of these purposes. Like proof of a common scheme, plan, or system, evidence of the defendant's modus operandi in committing acts such as this clearly would be material to establish the doing of the act in this case. Yet, without any testimony from the other acts witnesses to the circumstances surrounding the taking of the photograph, the photograph alone does not establish such an inference. On this record, therefore, the photograph was not admissible to prove the defendant's modus operandi.

Nor, under existing precedent, can the photograph be received as evidence "corroborative" of the victim's testimony. The prosecution refers to our decision in *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973), in which this Court found admissible evidence of other acts of sexual intercourse between the defendant and the victim to corroborate the victim's testimony, when to exclude such evidence would make the victim's testimony seem incredible, and suggests that we find a similar use for the other acts evidence in this case. However, this Court has already declined to extend the *DerMartzex* rule once to cases involving prior acts between the defendant and persons other than the complainant. *People v Jones,* 417 Mich 285; 335 NW2d 465 (1983).[26]

[26] We do not mean to suggest, however, that under existing precedent other-acts evidence which is corroborative of the victim's testimony must necessarily be excluded. Such evidence may be admissible, for example, to rehabilitate a witness after a cross-examination placing his credibility in issue. Nor do we reject the appropriateness of the adoption of a rule such as that suggested by the prosecution.

None of the remaining listed purposes, proof of motive, opportunity or preparation, offers any hope for admitting the photograph either.[27] On a better record the photograph might have gone some distance toward establishing a motive on the defendant's part for committing the charged act (i.e., to get a picture of it), which in turn could have been used as probative evidence of the commission of the act.[28] If, for example, the record established that, as the victim testified the defendant told him, the defendant was providing pictures of himself and "some other guys" to a "lady friend" in prison, the photograph well might have tended to show, along with that other evidence, the defendant's motive in committing the charged act. The picture also might have helped to establish motive if it were shown that the defendant was selling similar photographs.

On this record, though, no particular motive on the defendant's part is established by the photo-

---

We note the existence of proposed rule of evidence MRE 803A, published for comment June 1, 1988, at 430 Mich 1203, creating a hearsay exception for statements made by children under the age of ten describing any sexual acts performed with or on the declarant by another. This Court may eventually reconsider our decision in *Jones* not to extend the *DerMartzex* rule in light of the concerns that led us to propose this change in the hearsay rule.

[27] Our inquiry is not ended simply because the theories of admissibility advanced by the prosecutor or accepted by the trial court ultimately are found incorrect. While it is the prosecution's duty "to identify, with specificity, the purpose for which such evidence is admissible," *Golochowicz, supra,* p 314, for the benefit of the trial court, its failure to advance the correct theory at that time is not alone grounds for reversal; likewise, the trial court's own misidentification of the grounds for admission of the evidence in and of itself does not merit overturning its decision to allow it. See, e.g., *Templin v Nottawa Twp,* 362 Mich 257; 106 NW2d 825 (1961); *Plec v Liquor Control Comm,* 322 Mich 691; 34 NW2d 524 (1948).

[28] Evidence of motive "can . . . be relevant to prove the commission of the actus reus." Imwinkelried, § 4:19, p 43. See also, 22 Wright & Graham, *supra,* § 5240, p 480 ("Evidence of motive may be offered to prove that the act was committed . . ."); 1 Wharton, n 25 *supra,* § 185, p 782 ("Evidence of motive which suggests the doing of the act charged is always admissible . . .").

graph. Similarly, neither opportunity nor preparation seems particularly well suited to this case. Nor has the prosecution suggested any alternative intermediate inference, nor do we believe that one has been established on this record.[29] We must conclude, then, that since no allowable intermediate inference is established by the photograph, which inference is in turn probative of the ultimate issue in this case, the commission of the act, the trial court erred in admitting it.

Since we find that the proffered evidence does not meet the second part of the *Golochowicz* test, it is unnecessary to discuss at any great length its two remaining parts. We do observe, however, that if on retrial the prosecution is able to establish some permissible intermediate inference, whether listed in MRE 404(b) or not, it need only tend logically and reasonably to prove the ultimate issue of the commission of the act—or any other fact or issue in dispute—in order to be "material" as required by *Golochowicz*.[30]

As for the fourth part of the *Golochowicz* test, we note only that the question whether the proffered evidence is more probative than prejudicial can be answered only once a proper purpose for the evidence has been identified. In this case, then, that determination must await explanation by the prosecution of some proper use for the photograph.[31]

---

[29] Again, the prosecution is not limited to the purposes enumerated in the rule. Any purpose which does not violate the "forbidden" inference is allowable.

[30] As noted on p 220, we do not believe that this case turns on an analysis of the materiality element discussed by the concurrence. In our view, the picture's inadmissibility results from the prosecution's failure to point to some fact or issue other than the defendant's character that is proved by the picture, not its failure to then prove the materiality of that fact or issue.

[31] The concurrence addresses this issue in light of the ruling below that the evidence was admissible to show scheme, plan, or system.

CONCLUSION

We hold that on the facts of this case the photograph was improperly admitted, since the prosecution failed to establish a proper purpose for it under MRE 404(b). We therefore reverse the defendant's conviction.

We conclude, however, by acknowledging that the proper and improper purposes of other acts evidence are so variable, the state of proofs regarding materiality so infinite, and the precedents and commentators so inconsistent, that a rule of minimalism is the best rule of thumb in this area. Beyond the traditionally defined limits of other acts evidence, the prosecution is well advised to carefully consider in each case whether there is a proper purpose for the admission of the evidence that rests on some special circumstance of the other act, and whether that evidence is not only relevant, but material, at the time it is offered. The extraordinary proliferation of decisions under rule 404(b) admits of no further guidance.

RILEY, C.J., and BRICKLEY and GRIFFIN, JJ., concurred with BOYLE, J.

LEVIN, J. Robert Engelman was convicted of third-degree criminal sexual conduct[1] on evidence tending to show that he placed his mouth on the penis of a fifteen-year-old boy. At trial the prosecution introduced in evidence a photograph of Engel-

---

Since we find that the photograph does not, in the first instance, establish a scheme, plan, or system on defendant's part, we need not discuss its probative and prejudicial characteristics. We do, however, view with some skepticism the defendant's argument that the photograph is "devastatingly prejudicial." The photograph shows only frontal nudity, and the only physical contact involved is the defendant's arm around the girl's shoulders. As the concurrence points out, the photograph "might at the most tend to show commission of a misdemeanor, and possibly no offense at all . . . ." *Post*, pp 241-242.

[1] MCL 750.520d; MSA 28.788(4).

man casually standing nude approximately two feet from a partially nude young woman. The question presented is whether the photograph was admissible under the "similar acts" exception to the general rule barring evidence of a defendant's other crimes, wrongs, or acts to prove his character to show he acted in conformity therewith.[2] We join with the majority in holding that the Court of Appeals erred in deciding that the photograph was admissible, in reversing, and in remanding for a new trial.

I

Engelman and the complaining witness, were well acquainted. He often visited Engelman's home, and on occasion spent the night there.[3]

Engelman was a truck driver, who received calls to make out-of-state pickups. The witness testified that he had asked Engelman to take him along on such a trip. On a weekend in July or August, 1984, Engelman agreed to let him stay at his home and accompany him if he received a call to make an

---

[2] MRE 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such crime, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged.

[3] At trial, the prosecutor and defense counsel presented contrasting rationales for this relationship. The witness was a troubled young man. He had repeated several grades in school, was in a special education program, and often cut classes. At the time of the alleged incident, his parents were obtaining a divorce. The prosecutor attempted to portray Engelman as befriending the witness to sexually abuse him. Defense counsel, on the other hand, portrayed Engelman as a helpful "big brother," acting as a friend to a troubled young man.

out-of-state pickup. He spent Friday night at Engelman's home without incident. On Saturday, Engelman dropped him off at home so that he could pick up some clothes. Later that day Engelman picked him up.

According to the witness, during the drive back to Engelman's home Engelman asked him to take some pictures of Engelman for "some lady friend of his in prison that wanted some pictures of him and stuff and some other guys . . . ." He testified that he was uncomfortable with this topic and kept changing the subject. According to the witness, Engelman then asked if he would like to try on a pair of pants which Engelman had back at his home. He could have them if they fit.

After he and Engelman arrived at Engelman's home, they proceeded to the living room. He said that Engelman brought out the pants and an instant camera. The witness, who said that he habitually wears no underwear, took off his pants and began putting the other pair on. According to the witness, Engelman—who had been sitting on his knees in front of him—then leaned forward, put his mouth on the witness' penis, and took a photograph of the act. He said that after about ten seconds he pulled away, and told Engelman that he was going to take a shower.

According to the witness, while he was showering Engelman appeared nude, opened the shower curtain, and took another picture. The witness told him to get out, and he left. He said that he then finished showering and returned to the living room, where he watched TV and talked to Engelman. According to the witness, Engelman apologized and said that the pictures were taken for "the lady in prison." The witness spent the night at Engelman's and accompanied him on an over-

night out-of-state trip the next morning. He re-
ported no untoward incidents during the trip.

The photographs the witness said were taken of
him were not found during the search that pro-
duced the photograph of Engelman and the young
woman.

Engelman testified that he did not ask the wit-
ness to take pictures, or try on pants, that he did
not place his mouth on the witness' penis, and did
not take pictures of that act or of him showering.
Engelman's lawyer attacked the witness' credibil-
ity, focusing on discrepancies between his testi-
mony concerning the out-of-state trip and company
records,[4] and on his poor scholastic record and
troubled personal life.

The judge allowed the photograph of Engelman
and the partially nude woman to be introduced in
evidence on the basis that it showed a common
scheme or plan by Engelman.

The Court of Appeals held that the photograph
was properly admitted to show Engelman's
"scheme, plan, or system in doing an act," and to
bolster the witness' credibility. Additionally, the
Court held that because the judge twice instructed
the jury on the limited use for which the photo-
graph was admitted, any prejudicial effect "did not
substantially outweigh" the photograph's proba-
tive value.

II

The general rule is that evidence of a defen-
dant's prior misconduct is not admissible in evi-
dence unless it is offered for a purpose other than

___

[4] The records of the trucking company for which Engelman drove
indicated that he did not make a trip similar to the one described by
the witness in July or August of 1984. He did make such a trip in late
June, but it was on a Thursday, not a Sunday.

to show the defendant's propensity to commit crime.[5]

The rationale underlying this long-established rule of exclusion, well rooted in the common law, is that the jury is to decide each case solely on the basis of the evidence indicating that the defendant committed the particular act or acts charged. Evidence showing other misconduct of the defendant is therefore generally excluded out of concern that the jury will convict on the basis of what it sees as the defendant's apparent propensity to commit particular crimes:

> The policy consideration underlying general exclusion of similar bad-acts evidence for substantive purposes is the desire to avoid the danger of conviction based upon a defendant's history of other misconduct rather than upon the evidence of his conduct in the case in issue. [*People v Golochowicz*, 413 Mich 298, 308; 319 NW2d 518 (1982).]

Over one hundred years ago, this Court said in *People v Schweitzer*, 23 Mich 301, 304 (1871):

> The general rule is well settled that the prosecution are not allowed to prove the commission of another and distinct offense, though of the same kind with that charged, for the purpose of rendering it more probable in the minds of the jury that he committed the offense for which he is on trial; and this would be the natural and inevitable effect upon the minds of the jury, of the admission of such evidence, on whatever ground or pretense it might be admitted; and the defendant would thus be prejudiced on the trial of the offense charged, by proof which he has no reason to anticipate, of

---

[5] Evidence of other crimes, wrongs, or acts is not admissible to *prove the character of a person in order to show that he acted in conformity therewith.* [MRE 404(b). Emphasis added.]

an offense for which he is not on trial, and to which, when properly called upon to defend, he may have a perfect defense.

Evidence of a defendant's prior misconduct may, however, be admitted where it is probative of something other than the defendant's propensity to commit crime. To qualify for admission there must be some special quality or circumstance of the prior misconduct, some link between the prior misconduct and the crime charged, that tends to prove one or more of the following: the defendant's identity; absence of mistake or accident; the defendant's motive, intent, scheme, plan, or system in doing the act; or the defendant's opportunity, preparation, and knowledge:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident *when the same is material,* whether such other crime, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged. [MRE 404(b). Emphasis added.][6]

The clause—"when the same is material"—does not appear in the Federal Rules of Evidence,[7] from

---

[6] MRE 404(b) lists purposes for which evidence of prior misconduct is customarily admitted. We agree with the view expressed in the majority opinion (see *ante,* pp 212-213) that there may be permissible bases for admission other than those specified.

[7] Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. [FRE 404(b).]

which the language of the Michigan rule is derived. The concept that materiality is required is, however, well established in the federal cases.

This Court in *Golochowicz, supra,* p 309, set forth a four-part test to determine when this special link has been established:

—The prosecution must prove by substantial evidence that the defendant actually committed the prior acts sought to be introduced;

—The prior misconduct must tend to prove some fact or issue other than the defendant's bad character;

—The fact, which the evidence of prior misconduct tends to prove, must be material in that it relates to a proposition "in issue" in the case;

—The probative value must not be substantially outweighed by the danger of unfair prejudice.[8]

III

The other misconduct evidence offered in this case fails to satisfy two of the four requirements stated in *Golochowicz.* The only requirement that was clearly satisfied was that the prosecutor show by substantial evidence that Engelman had committed the other act.[9]

---

[8]    (1) [T]here must be substantial evidence that the defendant actually perpetrated the bad act sought to be introduced; (2) there must be some special quality or circumstance of the bad act tending to prove the defendant's identity or the motive, intent, absence of mistake or accident, scheme, plan or system in doing the act and, in light of the slightly different language of MRE 404(b) we add, opportunity, preparation and knowledge; (3) one or more of these factors *must be material* to the determination of the defendant's guilt of the charged offense; and (4) the probative value of the evidence sought to be introduced must not be substantially outweighed by the danger of unfair prejudice. [*Golochowicz, supra,* p 309. Emphasis added.]

[9] The photograph established that Engelman was standing nude two

## A

The photograph does not satisfy the materiality requirement because it does not tend to prove—in a manner consistent with MRE 404(b)—any proposition in issue.

Engelman was charged with third-degree criminal sexual conduct for allegedly placing his mouth on the witness' penis. The elements of this offense include that the accused engaged in "sexual penetration" with a person "at least 13 years of age and under 16 years of age." It is uncontested that at the time of the alleged conduct the witness was fifteen years old. The only element of the offense in issue was whether the act of "sexual penetration" occurred. The only factual issue in dispute was whether Engelman had in fact placed his mouth on the witness' penis. Unless the photograph tended to prove that Engelman had done so, it was not admissible.

Engelman's prior sexual conduct with adolescents was not material under any of the rationales enumerated in MRE 404(b):

—Identity was not in issue. Engelman did not claim that someone else fellated the witness.

—Absence of mistake or accident was not in issue. Engelman did not claim that he leaned forward and placed his mouth on the witness' penis by mistake.

—Engelman's motive or intent was not in issue. Where criminal sexual conduct in the third degree is charged on the basis that the act was committed with an underage person, proof of the actor's state

feet from a partially nude young woman.

With respect to the relevancy requirement, we assume, arguendo, that the photograph may have been probative of some immaterial fact or issue.

of mind is not required; proof that the defendant committed the sexual act is sufficient.

—Opportunity, preparation, or knowledge was not in issue. Engelman did not claim that he could not have fellated the witness because he did not know how to do so, or that he did not have sufficient opportunity, or that he could not have made the preparations that commission of the act would have required.

—"Scheme, plan, or system in doing an act" is not an issue. Evidence of a "scheme, plan, or system in doing an act" that links the other conduct with the crime charged is admissible only to prove a proposition that is in issue. Showing that the defendant operated according to a common scheme or plan is not an end in itself. Otherwise, the common scheme or plan exception would swallow the general rule. The prosecutor could always theorize that the defendant's prior conduct was part of some ultimate scheme or plan, or a series of separate schemes or plans, and obtain admission of any of a defendant's other conduct under such a sweeping definition.

Thus, the photograph was not admissible on the basis that it was probative of identity, absence of mistake or accident, motive, intent, opportunity, preparation, or knowledge. Those were not material issues.

To the extent a photograph showing Engelman standing nude approximately two feet from a partially nude young woman renders more probable the fact that Engelman placed his mouth on the penis of a young man, the photograph's probative value is based on the inference that since Engelman is the type of person who seduces or attempts to seduce children—a character trait allegedly shown by the photograph—he placed his mouth on

the witness' penis. This, of course, is the inference prohibited by MRE 404(b). Accordingly, the Court of Appeals erred in holding that the photograph satisfied the materiality requirement of MRE 404(b).

Analogous is *People v Major,* 407 Mich 394; 285 NW2d 660 (1979). There, the defendant was convicted of second-degree criminal sexual conduct[10] for kissing the breast of an eleven-year-old girl. Major denied that he committed the act. At trial, the judge admitted in evidence under the "similar acts" exception the testimony of two other young girls that Major had on prior occasions exposed himself in their presence. One of the girls stated that Major had masturbated and touched her chest. The trial judge and the Court of Appeals held that the testimony was admissible as "similar acts" to show Major's motive and intent.

This Court reversed, and ruled that the "similar acts" testimony offered at Major's trial failed to satisfy the materiality or the probatory requirements. Other than showing that Major had misbehaved sexually in the past, the other misconduct testimony was not probative of his having subsequently kissed the breast of this eleven-year-old girl. Nor was the testimony material.

Intent and motive were not material issues[11] in *Major:* .

---

[10] MCL 750.520c(1)(a); MSA 28.788(3)(1)(a).

[11] The Court adopted the definition set forth in McCormick, Evidence (2d ed), § 185, p 434, in defining materiality:

"[M]ateriality in its more precise meaning looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to prove a proposition which is not a matter in issue or probative of a matter in issue, the evidence is properly said to be immaterial. As to what is 'in issue,' that is, within the range of the litigated controversy, we look mainly to the pleadings, read in the light of the rules of pleading and controlled by the substantive law." [*Id.,* p 399.]

Except to the extent that proof of all criminal acts requires proof of wrongful purposes or *mens rea, the defendant's motive or intent were not material in this case in the sense of being propositions separately in issue.* The defendant made no claim, for example, that he kissed [the complaining witness] unintentionally or with some innocent intent or purpose nor did he claim he did so out of any justifiable motive. Had he made such claims in defense or explanation of the behavior attributed to him, he would have placed his intent or motive in issue and thus constituted them propositions material to the case in the sense that term is used in the statute. Had that been the situation, evidence of the prior sexual acts may have been admissible as tending to show that since he performed similar acts of sexual degeneracy on small girls on earlier occasions, his claim that his intent and motive were innocent in this case is unlikely to be true. [*Id.,* p 400. Emphasis added.]

B

In the instant case, the Court of Appeals said:

The photograph is *probative evidence of defendant's scheme, plan, or system in doing an act,* since it does depict defendant and a minor child in the nude in defendant's living room while the child was wearing a nightgown that defendant had bought her. Further, the evidence is probative of the victim's version of what happened since the victim and defendant were the only witnesses to the alleged incident involving the victim. Finally, the trial court twice gave jury instructions on the limited use for which the photograph was admitted. Consequently, the prejudicial effect that the photograph may have had on the jury did not

substantially outweigh its probative value.[12] [Citations omitted; emphasis added.]

It is not enough that the photograph tended to prove a "scheme, plan, or system in doing an act." Showing that the defendant operated according to a common scheme or plan is not an end in itself. Evidence of a "scheme, plan, or system in doing an act" that links the other conduct with the crime charged is admissible only to prove a material proposition.

To the extent the photograph of Engelman and the young woman tended to prove a common scheme, plan, or system of photographing the seduction of young persons, the photograph still did not prove a material issue in dispute.[13] Identity, absence of mistake or accident, motive, intent, opportunity, preparation or knowledge, were not, again, in issue. The only issue in dispute was whether the act Engelman was charged with committing in fact occurred.

Proof of a common scheme or plan is generally offered to prove identity where there is ample evidence that a crime has been committed and the disputed issue is whether the accused was the person who committed it. Proof of a common scheme or plan may establish identity in several ways.

First, the prosecutor may through proof of the defendant's other misconduct establish that the defendant acted according to a certain modus operandi that also was followed in the commission of the charged offense. The more peculiar the modus

[12] *People v Engelman,* unpublished opinion per curiam of the Court of Appeals, decided March 18, 1987 (Docket No. 90335), slip op, p 2.

[13] With respect to the use of other acts evidence to corroborate the witness' testimony, see section III, part C.

operandi, the more it acts as a signature, identifying the defendant as the perpetrator.[14]

Second, the prosecutor may prove identity by showing that the defendant's commission of the crime charged followed logically from a plan that can be inferred from the defendant's other misconduct. This use of the common scheme or plan rationale should be carefully limited to avoid confusion that would result in the improper admission of other misconduct to establish only propensity to commit an offense.

Suppose that the defendant was accused of murdering one of his siblings. The prosecutor would be permitted to introduce evidence showing that the defendant had also murdered or attempted to murder his other siblings in hope of becoming the sole heir to his parents' estate. Proof of the defendant's other misconduct would be admissible, not because it shows a propensity to kill, but because it shows that the defendant had a common scheme or plan to kill his siblings, including the sibling in the crime charged, in hope of becoming the sole heir. Again, a crime has clearly been committed, and proof of a common scheme or plan is offered to prove the identity of the perpetrator—not whether a crime has been committed.

By contrast, in this case whether a crime was committed is the central disputed issue. Whether or not a crime was committed—whether Engelman had in fact placed his mouth on the witness' penis —was the central factual issue at trial. Proof of a common scheme or plan by which Engelman seduced adolescents was offered not to prove identity, but rather to prove that a crime had in fact been committed. To admit evidence of a defen-

---

[14] In *People v Kelly,* 386 Mich 330; 192 NW2d 494 (1971), proof of the defendant's modus operandi in a subsequent rape aided in identifying him as the rapist in the crime charged.

dant's other misconduct to show that a charged offense had in fact been committed is to allow the admission of propensity evidence: because Engelman appears to have previously seduced an adolescent, it is likely or possible that he did it again.[15]

C

This misuse of propensity evidence is closely tied to bolstering the witness' credibility, the other rationale under which the Court of Appeals held the trial court properly admitted the photograph. The photograph tended in some measure to corroborate certain collateral aspects of his testimony (nudity, alcohol, photographs) and thus may have assisted the jury in determining whether it was the witness or Engelman who was telling the truth.

Bolstering a witness' credibility is not, however, a sufficient basis on which to admit evidence of a defendant's other misconduct.[16] If similar act evi-

---

[15] Other jurisdictions that have considered the question have reached the same conclusion. In *Bolden v State,* 720 P2d 957 (Alas App, 1986), defendant Bolden was convicted of sexually abusing his eleven- and twelve-year-old daughters. At trial the prosecutor introduced evidence that Bolden had also sexually abused other children. The court held that the trial court had erred in admitting the other misconduct evidence. As in this case, "[t]he only real question . . . was whether Bolden committed the acts with which he was charged. The only apparent purpose for admitting the evidence of the other alleged acts appears to be to corroborate the testimony of Bolden's daughters that they were molested." *Id.,* p 960. The "common scheme or plan" exception did not apply. "[T]o be admissible, evidence of other crimes must relate to an actual issue in dispute at trial, such as the identity of the perpetrator or a claim that the alleged crime was an accident or mistake." *Id.,* p 961. Because such matters were not in issue, the other misconduct evidence was probative solely of Bolden's propensity to molest children, and therefore inadmissible.

See also *People v Tassell,* 36 Cal 3d 77; 201 Cal Rptr 567; 679 P2d 1 (1984).

[16] This Court has developed an exception where the defendant's other sexual misconduct involves the complainant. See *People v*

dence were admissible for the purpose of assisting the jury in deciding credibility, this new exception, however it might be disguised or characterized ("common scheme, plan or system"), would swallow the general rule barring the admission of a defendant's other misconduct because credibility is an issue in most every case.[17] As this Court said in *Schweitzer, supra,* p 305:

> [E]vidence of [another] offense could not be admitted for the collateral, or at least mere subordinate, purpose of corroborating a witness in the cause. This would be to give more importance to such subordinate or incidental question than to the principal question in issue, the guilt or innocence of the party on trial. The admission of this evidence was therefore clearly erroneous.[18]

### D

This Court, over half a century ago, in *People v Dean,* 253 Mich 434; 235 NW 211 (1931), dealt

*DerMartzex,* 390 Mich 410, 413; 213 NW2d 97 (1973); *People v Jenness,* 5 Mich 305, 323-324 (1858).

By contrast, this case presents the question whether a defendant's sexual misconduct with persons *other* than the complainant may be admitted to bolster the complainant's credibility. This other misconduct does not reveal the full relationship between the defendant and the complainant, but rather simply tends to show Engelman's propensity to seduce or attempt to seduce adolescents.

[17] Where the victim is unable to testify and hence there is no issue of credibility, propensity evidence may be admissible, on a rationale similar to that which allows the admission of such evidence to negative accident or mistake, to negative the inference that morbidity or mortality was the result of natural causes.

[18] Cf. *United States v DeCicco,* 435 F2d 478, 484 (CA 2, 1970) (where intent was in issue and a prosecution witness' story, if believed, would lead "ineluctably to the conclusion that the defendants knew what they were doing," the probative value of prior misconduct on the issue of intent was far outweighed by its prejudicial effect), *Crinnian v United States,* 1 F2d 643, 645 (CA 6, 1924), *State v Roach,* 109 Idaho 973, 976; 712 P2d 674 (1985), *People v Ogunmola,* 39 Cal 3d 120; 215 Cal Rptr 855; 701 P2d 1173 (1985), and *Bolden v State,* n 15 *supra.* See also *State v Goldsmith,* 122 Wis 2d 754; 364 NW2d 178 (1985), and *State v Munz,* 355 NW2d 576, 581 (Iowa, 1984).

with a case factually similar to this case. Dean
was convicted of committing an act of gross in-
decency with a seventeen-year-old boy. The judge
had permitted the prosecution to prove Dean's
commission of similar acts with other young boys.
Construing the statute, identical in substance with
MRE 404(b),[19] this Court reversed.

Proof of Dean's other misconduct showed only
propensity, and was therefore inadmissible:

> The question of the defendant's "motive, intent,
> the absence of, mistake or accident on his part" is
> clearly not involved in the charge as laid. *Neither
> do we think that it can be said that in the commis-
> sion of the crime charged he was acting in con-
> formity with any "scheme" or "plan" theretofore
> formulated by him, or that proofs of similar acts
> with others in any way tend to inform the court or
> jury as to his "system" in doing the act com-
> plained of.* [*Id.,* pp 436-437. Emphasis added.]

> The only purpose of submitting such proof in
> this case was to render it more probable in the
> minds of the jury that the defendant committed
> the offense with which he is charged, and on
> reason as well as authority it was not admissible
> for that purpose. [*Id.,* p 438.]

---

[19] In any criminal case where the defendant's motive, intent,
the absence of, mistake or accident on his part, or the defen-
dant's scheme, plan or system in doing an act, is material, any
like acts or other acts of the defendant which may tend to show
his motive, intent, the absence of, mistake or accident on his
part, or the defendant's scheme, plan or system in doing the
act, in question, may be proved, whether they are contempora-
neous with or prior or subsequent thereto; notwithstanding
that such proof may show or tend to show the commission of
another or prior or subsequent crime by the defendant. [1927
PA 175; ch 8, § 27 (Code of Criminal Procedure), 1929 CL 17320;
MCL 768.27; MSA 28.1050.]

IV

The Court of Appeals also erred in concluding that the photograph's probative value, if any, was not substantially outweighed by its prejudicial effect.

A photograph showing Engelman casually standing nude approximately two feet from a partially nude young woman is at most minimally probative of a scheme, plan, or system involving subsequent oral-genital contact between Engelman and the witness—which scheme, plan, or system is not an "issue" in itself. There is a considerable difference between evidence that Engelman stood nude next to a partially nude young woman and the charge that he placed his mouth on a fifteen-year-old boy's penis. The latter involves intimate physical contact, and implies homosexuality. The photograph does not show intimate physical contact and implies heterosexuality. Looking at the photograph alone, a reasonable juror would most likely conclude that the witness was interested in girls and would eschew boys.[20]

The charged offense is a felony, while standing nude next to a partially nude young woman is at most a misdemeanor.[21] Allowing the introduction of evidence that might at the most tend to show commission of a misdemeanor, and possibly no

---

[20] We do not suggest that the photograph was not "relevant"—as that term is defined in MRE 401—simply because the "victim" in the photograph was female and the alleged victim in this case is male. The gender distinction is, however, germane to an assessment of the photograph's probative value.

In any event, the question whether a man who has appeared nude in a photograph with a partially nude young woman is more likely (than a man who has not appeared in such a photograph) to have placed his mouth on a young man's penis, would seem to be a question for the social scientists, not the compilers of a "Webster's" dictionary. See 2 Weinstein, Evidence, ¶ 404[11], p 404-83. Cf. *ante,* p 219, n 22.

[21] See MCL 750.335a; MSA 28.567(1) (indecent exposure).

offense at all, to convict Engelman of a felony would be to compound the bootstrapping in allowing the introduction of evidence that has no bearing on any disputed issue other than to establish the defendant's propensity for committing the type of crime charged—the purpose for which evidence of other acts is *inadmissible.*

It may be offensive to take and collect photographs of young persons in the nude, but it is not claimed or charged that it is a criminal offense to do so. The issue in this case was not whether Engelman photographed the witness but whether Engelman fellated him. The photograph he said Engelman took of the charged offense would clearly be admissible. A photograph evidencing a possible tryst with another person, young or old, male or female, does not tend to prove—in a manner consistent with MRE 404(b)—any material factual issue in dispute.

The photograph's prejudicial effect substantially outweighed any probative value. The photograph shows Engelman standing nude next to an apparently young, partially nude woman. The inference might be drawn that they had engaged or were about to engage in sexual activity. In common parlance, the photograph has a significant potential to convey the impression that Engelman is a pervert, a "crime" for which he was not on trial.

The prejudice most likely caused by the negative impression created by such an inference is so great that the photograph should be admitted only upon a strong showing of probativeness and materiality.[22] The photograph, on the record in the instant

---

[22] "One need not display an imposing list of statistics to indicate that community feelings everywhere are strong against sex offenders. . . . Once the accused has been characterized as a person of abnormal bent, driven by biological inclination it seems relatively easy to arrive at the conclusion that he must

case, is at most minimally probative with respect to Engelman's scheme, plan, or system—which is not an "issue" in itself. The photograph was minimally probative with respect to the material issue whether Engelman committed the crime charged,[23] but that probativeness is the result of an inference of Engelman's propensity to commit the crime charged—the inference that is forbidden by MRE 404(b).

In *Major*, this Court held that prior testimony that the defendant had exposed himself to two young girls and kissed the breast of one of them was not probative or material respecting the charge that he kissed the breast of an eleven-year-old girl. Similarly, Engelman's standing nude next to a partially nude young woman is not probative or material respecting the charge that he placed his mouth on the penis of a fifteen-year-old boy.[24]

CAVANAGH and ARCHER, JJ., concurred with LEVIN, J.

be guilty, he could not help but be otherwise." [2 Weinstein, Evidence, ¶ 404[11], p 404-82.]

[23] We acknowledge that propensity evidence is logically relevant. A person who has committed an offense may be more likely to commit that or another offense than a person who has not committed that or any other offense. If relevance alone were sufficient, MRE 404(b) would have no operative effect as a limitation on the use of propensity evidence.

[24] See also *People v Hernandez*, 423 Mich 340; 377 NW2d 729 (1985) (the defendant was charged with having engaged in sexual contact with a child under thirteen years of age; evidence indicating that the defendant had previously kissed a young girl on the mouth was properly excluded under *People v Major* and *People v Golochowicz, supra*), and *Ali v United States*, 520 A2d 306, 309-310; 40 Cr L 2342 (DC App, 1987) (where the defendant was charged with repeatedly sexually abusing a young girl, evidence that he had also sexually abused the girl's sister was improperly admitted because it established only impermissible propensity evidence).