PEOPLE v STARR

Docket No. 107013. Argued November 4, 1997 (Calendar No. 5). Decided June 2, 1998. Rehearing denied 459 Mich 1203.

Malcolm R. Starr was convicted by a jury in the Washtenaw Circuit Court, William F. Ager, J., of two counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct involving his nine-year-old adopted daughter. Before trial, the court granted the prosecutor's motion to admit testimony by the defendant's sister that he had subjected her to similar sexual acts. The Court of Appeals, DOCTOROFF, C.J., and M. J. KELLY, J. (MARKEY, J., dissenting), reversed, holding that the prejudicial nature of the evidence substantially outweighed its probative value (Docket No. 180089). The people appeal.

In an opinion by Justice WEAVER, joined by Chief Justice MALLETT, and Justices BOYLE and TAYLOR, the Supreme Court held:

The evidence in question was properly admitted.

1. Evidence of a defendant's alleged other crimes, wrongs, or acts is inadmissible to prove action in conformity with character; however, MRE 404b(1) permits admission of evidence on any ground that does not risk impermissible inferences of character to conduct. To protect against such inferences, the evidence must be offered for a proper purpose, it must be relevant, its probative value must not be substantially outweighed by unfair prejudice, and, upon request, a limiting instruction may be provided.

2. In this case, the half-sister's testimony is the only evidence that rebuts the defendant's claim that the mother fabricated the charges and explains the two-year delay in reporting. This tips the balance in favor of admission in this case and requires the finding that, under MRE 404(b), the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice.

3. The proffered evidence was properly admitted. It was the only evidence to explain why the mother specifically questioned the victim about her relationship with her father, and why the victim delayed two years in reporting the abuse. Further, it was the only evidence that effectively refutes the claim of fabrication.

Reversed.

Justice CAVANAGH, joined by Justices BRICKLEY and KELLY, dissenting, stated that the testimony of the defendant's sister regarding past acts allegedly performed on her by the defendant was inadmissible under MRE 404(b) and should have been excluded. The majority's decision is not supported by the Michigan Rules of Evidence, prior case law, or the facts of this case. The sister's testimony was neither offered nor admitted for a proper purpose.

217 Mich App 646; 553 NW2d 25 (1995) reversed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Brian L. Mackie,* Prosecuting Attorney, and *Lenore M. Ferber,* Assistant Prosecuting Attorney, for the people.

*Daniel J. Rust* for the defendant.

Amicus Curiae:

*William A. Forsyth,* President, and *Timothy K. McMorrow,* Chief Appellate Attorney, for Prosecuting Attorneys Association of Michigan.

WEAVER, J. We granted leave to determine whether the trial court abused its discretion in admitting testimony by defendant's younger half-sister that he had abused her before abusing the victim in this case, his minor adopted daughter. The Court of Appeals found that the trial court abused its discretion in admitting such testimony.[1] We disagree and find that there was no abuse of discretion. *People v VanderVliet,* 444 Mich 52; 508 NW2d 114 (1993). Accordingly, we reverse the decision of the Court of Appeals.

I

In March, 1994, the victim in this case, the nine-year-old adopted daughter of defendant, told her

---

[1] 217 Mich App 646; 553 NW2d 25 (1996).

mother, in response to questions, that defendant had engaged in numerous sexual acts with her in 1992, when she was six. During that time, she lived with defendant at her grandparents' home. When she told her mother that this abuse had occurred, her parents had been divorced approximately two years, since November, 1992, and were engaged in a dispute regarding visitation.

On the basis of the victim's admissions to her mother, defendant was charged with two counts of first-degree criminal sexual conduct[2] and one count of second-degree criminal sexual conduct.[3]

Before trial, the prosecution moved to admit testimony by defendant's half-sister that he had subjected her to similar sexual conduct and rape. These alleged acts were uncharged and occurred over a fourteen-year period that began in 1977 when the she was four years old, and ended in 1991 when the she was approximately eighteen, three years before the instant case.[4] His half-sister testified that the abuse ended only when she became pregnant and told the defendant she would no longer have intercourse with him.

The trial judge ruled that the evidence was admissible because, in light of this Court's decision in *People v VanderVliet, supra,* under MRE 404(b) the probative value of the testimony was not substantially outweighed by its prejudicial effect.

The prosecution offered the victim's testimony that defendant engaged in sexual conduct with her when she was in the first grade and living with him at her

---

[2] MCL 750.520b; MSA 28.788(2).

[3] MCL 750.520c; MSA 28.788(3).

[4] There was some unresolved dispute regarding the half-sister's age when defendant stopped abusing her.

grandparents' home. Specifically, she testified that "a lot of times" defendant rubbed his privates on her privates, licked her privates, and made her lick his privates. She indicated that defendant's privates were located "[b]elow his waist" and that "kiss[ing]" his private meant that she put his private "on" or "in [her] mouth" and "[m]ov[ed her] head up and down." She further testified that before and after these acts would occur, defendant would show her "dirty magazines and tapes."

Defendant's half-sister was twenty-one at the time of trial and testified that defendant is her half-brother and is approximately eight and one-half years older than she. According to her, defendant began abusing her when she was four years old. The abuse began with defendant touching her vagina, and, over the course of the next thirteen years, escalated to cunnilingus and culminated in intercourse.

At trial, defendant entered a general denial with respect to the charges and flatly denied any sexual involvement with his half-sister at any time. The defendant was the main witness for the defense. He claimed that the charges were fabricated in order to prevent him from being able to visit his children. To rebut this allegation, the victim's mother testified that she never threatened to prevent defendant from seeing his children and victim.

The jury convicted defendant on all charges on July 12, 1994, and the trial judge sentenced him to consecutive sentences of fifteen to thirty-five years imprisonment for each CSC I conviction, and ten to fifteen years imprisonment for the CSC II conviction.

Defendant appealed, and the Court of Appeals reversed[5] on the basis that the prejudicial nature of the evidence substantially outweighed its probative value.

We granted leave to consider whether the trial court abused its discretion in admitting the sister's testimony.

II

Resolution of the issue before us turns on our application of Michigan Rule of Evidence 404(b), regarding the admissibility of "other crimes, wrongs, or acts," to the facts of this case. The decision whether evidence is admissible is within the trial court's discretion and should only be reversed where there is a clear abuse of discretion. *People v Bahoda*, 448 Mich 261; 531 NW2d 659 (1995).

A

Generally, Michigan's Rules of Evidence proscribe the use of character evidence to prove action in conformity therewith. MRE 404.[6] Character evidence

---

[5] Judge MARKEY dissented and would have affirmed defendant's convictions.

[6] MRE 404 provides, in relevant part:

(a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

(1) Character of accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same;

(2) Character of victim of a crime other than a sexual conduct crime. Evidence of a pertinent trait of character of the victim of the crime, other than in a prosecution for criminal sexual conduct, offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

includes evidence of other crimes, acts, or wrongs, such as, in this case, the half-sister's testimony that defendant sexually abused her over a period of years and several years before trial. This Court has previously explained the policy reason for the rule as

> the desire to avoid the danger of conviction based upon a defendant's history of other misconduct rather than upon the evidence of his conduct in the case in issue. [*People v Golochowicz*, 413 Mich 298, 308; 319 NW2d 518 (1982).]

MRE 404(b)(1) is a means by which "other acts" evidence is properly admissible. This rule provides, in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake . . . .

---

(3) Character of victim of sexual conduct crime. In a prosecution for criminal sexual conduct, evidence of the victim's past sexual conduct with the defendant and evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease;

(4) Character of witness. Evidence of the character of a witness, as provided in Rules 607, 608, 609.

(b) Other crimes, wrongs, or acts.

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

While MRE 404(b)(1) is one of a few rules with which "other acts" evidence may properly be admitted, it is a rule of inclusion that contains a nonexclusive list of "noncharacter" grounds on which evidence may be admitted. This rule permits the admission of evidence on any ground that does not risk impermissible inferences of character to conduct. *People v Engelman*, 434 Mich 204, 213; 453 NW2d 656 (1990).

To protect against such impermissible inferences, this Court has established a procedural safeguard in the form of a four-pronged standard that a trial court must insure is satisfied before admission of other acts evidence. 413 Mich 309. This Court recently redefined the four-part standard for admissibility of other acts evidence under Rule 404(b) in *People v VanderVliet* and rejected a mechanical application of a bright-line test for admissibility under MRE 404(b). The *Vander-Vliet* standard requires that the trial court determine:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*Id.* at 55.]

Under the first prong, Rule 404(b) prohibits admission of evidence "[i]f the proponent's only theory of relevance is that the other act shows defendant's inclination to wrongdoing in general to prove that the defendant committed the conduct in question . . . ." *People v VanderVliet* at 63. Rule 404(b), however, permits admissibility of evidence whenever it is relevant

to a noncharacter theory such as, but not limited to, those reasons specifically listed in the rule.[7]

Regarding relevance, the "touchstone" of admissibility and the second prong of the standard, Michigan's evidentiary rules specifically instruct us that

> [a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible. [MRE 402.]

According to MRE 104(b), "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." Relevant evidence has two characteristics: it is "material" and has "probative force." MRE 401.[8] To be "material," the evidence must be logically relevant to an issue or fact of consequence at trial. Any tendency to prove such a

---

[7] As this Court explained in *VanderVliet, supra* at 64:

> The question is not whether the evidence falls within an exception to a supposed rule of exclusion, but rather whether the "evidence [is] in any way relevant to a fact in issue" other than by showing mere propensity, Stone, *The rule of exclusion of similar fact evidence: America,* 51 Harv L R 988, 1004 (1938). "Put simply the rule is *inclusionary* rather than exclusionary." *Engelman, supra* at 213.

[8] MRE 401 provides:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

fact in issue constitutes sufficient probative value for purposes of relevancy.

This Court recently clarified that the third prong of this standard requires nothing more than the balancing process described in MRE 403. *People v Vander-Vliet* at 72. Rule 403 allows for the exclusion of relevant evidence if "its probative value is *substantially* outweighed by the danger of *unfair* prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[9]

Finally, we would note that the fourth and final part of this standard needs no clarification because it merely authorizes "a limiting instruction" upon request. *VanderVliet* at 75.

B

In this case, the Court of Appeals held that the trial court abused its discretion with respect to this third

---

[9] One court explained the similar provisions in the Federal Rules of Evidence as follows:

The first sentence of rule 404(b) prohibits the introduction of evidence of a defendant's crimes, wrongs, or acts only for one particular purpose. The second sentence of the rule offers some examples of permissible purposes for which that evidence might be relevant within the meaning of rule 401. Evidence that fits within rule 404(b)'s second sentence, however, and that is not barred under rule 404(b)'s first sentence, is not by virtue of those reasons automatically admissible: instead, "the determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions under Rule 403." Fed R Evid 404 advisory committee's note; see, e.g., *United States v Manner* [281 US App DC 89, 92] 887 F2d 317, 321 (1989), cert denied 493 US 1062; 110 S Ct 879; 107 L Ed 2d 962 (1990). [*United States v Rogers*, 287 US App DC 1, 3-4; 918 F2d 207 (1990).]

prong of the *VanderVliet* standard. According to the Court of Appeals,

> these allegations of similar acts were so horrendously prejudicial as to require their suppression as being more prejudicial than probative. This was not a skunk in the jury box. It was a pig farm. No trier of fact could have been unswayed by the depiction of this depravity in assessing discrete claims of the "bad man's" guilt. We decry permitting the effect of this testimony under any rubric, including an instruction by the court that the prior acts were introduced in accordance with MRE 404(b)(1) for purposes of establishing a scheme or plan, or absence of accident or mistake.

> *       *       *

> The effect here was to try the defendant for uncharged criminal acts of monstrous repugnance without the bother of due process. [217 Mich App 646, 647-648; 553 NW2d 25 (1996).][10]

We do not share the above tone of outrage or analysis. First of all, we would note that, when the Court of Appeals decried the uncharged nature of the acts, it must have overlooked the fact that MRE 404(b) specifically addresses the admissibility of *uncharged* conduct. It also failed to state the proper inquiry, which is not whether the testimony was more prejudicial than probative, but whether the probative value is *substantially* outweighed by the risk of unfair prejudice. Second, while we would agree that the acts described in the proffered testimony are certainly "depraved" and of "monstrous repugnance," such

---

[10] The reference to the proffered evidence as "not a skunk in the jury box. It was a pig farm" derives from *Dunn v United States*, 307 F2d 883, 886 (CA 5, 1962).

characteristics were inherent in the underlying crime of which defendant stood accused. The danger the rule seeks to avoid is that of unfair prejudice, not prejudice that stems only from the abhorrent nature of the crime itself. See *Golochowicz, supra* at 326. Third, nowhere in its analysis does the Court of Appeals identify the probative nature of the half-sister's testimony, which is the necessary prerequisite to evaluation of the evidence's probative value against the danger of unfair prejudice. For these reasons, we find the Court of Appeals analysis lacking and incorrect. As discussed below, we find the balance tips in favor of admission and requires that this Court uphold the trial court's finding that the evidence is admissible under MRE 404(b), and that the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice.

C

Having rejected the Court of Appeals analysis as unpersuasive, we must now determine whether the proffered testimony was properly admitted. We find that the evidence was properly admitted, with a limiting instruction, under the *VanderVliet* standard.

The first step in reaching this conclusion involves an identification and evaluation of the purposes for which the evidence was offered. In this case, the prosecution offered the testimony for a myriad of reasons, including the following theories: to show defendant's intent to be sexually gratified through his actions toward the victim; to show the existence of a scheme, plan, or method by which defendant accomplished the sexual abuse; or to show the absence of either a mistake in the victim's allegations or percep-

tion or of innocent intent or touching by defendant. These were legitimate, material, and contested grounds on which to offer the evidence because, in this case, defendant entered a general denial. Defendant's general denial placed all elements of his CSC charges at issue. See *People v VanderVliet, supra* at 78.

Of these theories, only one needs to be a proper, noncharacter reason that compels admission for the testimony to be admissible. We find the half-sister's testimony to be admissible evidence to rebut defendant's claim of fabrication of the charges. Indeed, the half-sister's testimony was the only evidence to explain why the mother specifically questioned the victim about her relationship with her father, and why the victim waited two years before telling her mother about the abuse she suffered at the hands of defendant.

One of the theories presented by the defense was that the victim's mother fabricated these allegations of sexual abuse to prevent defendant from having any future contact with his adopted daughter.[11] To refute this claim that the allegations were fabricated by the victim's mother, the prosecutor introduced defendant's half-sister who testified, on cross-examination, that the victim did not reveal the abuse until the victim was directly asked about it by her mother, two years after the abuse occurred. The mother began asking questions about defendant's behavior with the

---

[11] In his opening statement, defense counsel claimed that the victim's mother "planted" the allegations in the victim's mind solely to retaliate against defendant. In his closing argument, defense counsel argued that "[t]he fact that Jennifer Starr went to [her nine-year-old daughter] and broached the subject with her shows that the mother is the person who did plant this in her head."

victim in response to a conversation she had with
defendant's half-sister. During this conversation,
defendant's half-sister confided that she had been
abused by her brother since age four and over the
course of several years. This information prompted
the mother to ask the victim pointed questions about
her relationship with defendant, at which time the
victim admitted that two years prior, the victim was
forced to engage in sexual conduct with him on sev-
eral occasions. Absent the half-sister's testimony, the
prosecutor could not effectively rebut defendant's
claim that the charges were groundless and fabricated
by her mother. As in *People v VanderVliet*, we find
that "[w]ithout such evidence, the factfinder would be
left with a chronological and conceptual void regard-
ing the events . . . ." *Id.* at 81, citing *United States v
Ostrowsky*, 501 F2d 318, 322 (CA 7, 1974). Thus, we
find the proffered evidence to be probative to refute
the defendant's allegations of fabrication of charges.[12]

Further, we find this evidence survives the third
prong of *VanderVliet* as being substantially more pro-
bative than prejudicial. Because the charges were
filed two years after the abuse occurred, there was no
medical evidence to substantiate the victim's claims.

---

[12] The dissent's argument against our finding that the testimony was
properly admitted because it disputes the claim of fabrication fails to give
effect to this Court's holding in *People v Kreiner*, 415 Mich 372; 329 NW2d
716 (1982). In *Kreiner*, this Court essentially held that the Michigan Rules
of Evidence constituted a codification of the rules of evidence that super-
seded the common-law rules. Specifically, this Court held that the tender-
years exception to the hearsay rule "did not survive adoption of the Michi-
gan Rules of Evidence." *Id.* at 377. Given our holding in *Kreiner*, the dis-
sent's discussion of *People v Dean*, 253 Mich 434; 235 NW 211 (1931), is
inapposite. *Post* at 510, n 7. The rule discussed in *Dean* was considered
exclusionary in nature. *Dean*, therefore, cannot be used to limit MRE
404(b), which is truly a rule of inclusion. Indeed if we were to adopt the
dissent's reasoning, this rule would be inclusionary in name only.

Indeed, in this case the half-sister's testimony is the only evidence that effectively refutes the claim of fabrication and explains the delay in reporting the crime.[13] Moreover, the half-sister's testimony revealed a striking similarity between the half-sister's age, living arrangement, and relationship with defendant at the time the abuse of the half-sister began, to that of the victim. This similarity explains why the mother became so concerned with her daughter's relationship with defendant, and makes more plausible the proposition that the mother's questions were prompted by concern for her daughter's safety rather than spite and a desire to prevent defendant from getting custody of the victim. We, therefore, find that the probative force of the evidence, coupled with the trial court's limiting instruction to the jury, did not stir the jurors to "such passion . . . as to [be swept] beyond rational consideration of [the defendant's] guilt or innocence of the crime on trial."[14]

---

[13] The dissent asserts that the testimony was not necessary to the case. *Post* at 507, n 5. This claim begs the question and would, ultimately, seek to replace the jury of peers in this case with the opinion of the dissent, which was formed with the benefit of hindsight. A careful review of the evidence, however, confirms that the testimony was of critical import to the case because it was the only independent evidence that addressed the defense of fabrication other than the testimony of the mother and the victim, both of whose credibility was at issue and under attack.

Furthermore, the testimony regarding the *type* of abuse suffered by the half-sister was also properly admissible because it explained why the mother immediately became concerned for her daughter, the victim, given the similarity of age, living arrangement, and relationship to the defendant. The sister's testimony regarding the termination of the abuse also showed that the end was involuntary for the defendant and occurred only one year or so before the victim lived with her father. The sincerity, reasonableness, and degree of concern on the part of the mother could not be shown except by the sister's more specific testimony of abuse.

[14] McCormick, Evidence (2d ed), § 190, p 454.

Accordingly, we hold that the trial court did not abuse its discretion in admitting the half-sister's testimony of other acts under Rule 404(b) and our decision in *People v VanderVliet, supra*. We, therefore, reverse the decision of the Court of Appeals and reinstate the trial court's decision.

MALLETT, C.J., and BOYLE and TAYLOR, JJ., concurred with WEAVER, J.

CAVANAGH, J. (*dissenting*). The testimony of defendant's sister regarding past acts allegedly performed on her by the defendant was inadmissible under MRE 404(b) and should have been excluded. The trial court made statements that indicated a misconception of this Court's decision in *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993). I find the Court's decision today to both evidence and encourage that and other misconceptions of the standard to be applied in instances of proffered "other bad acts" evidence under MRE 404(b). The testimony offered was extremely prejudicial to the defendant, and not admissible for any proper purpose.[1]

I

The defendant in this case was charged with multiple counts of criminal sexual conduct with an adopted daughter. The defendant and the complain-

---

[1] I dissented in *VanderVliet*, cautioning that our past decisions should not be lightly discarded, and that the standard articulated by the majority would offer new avenues of confusion for the courts below. Less than a year later, the trial court in this case stated, on the record, that it was surprised to see this Court's decision in *VanderVliet*, "because that, to me, opens the door considerably more than under the cases we had previous to the time. If this motion had been made prior to the *Vandervleet* [sic] decision, this Court is convinced that it probably would not have admitted it."

ant's mother also had two minor sons, and the allegations arose during a custody dispute regarding the two sons. In response to questioning by her mother, the daughter complained of sexual contact with the defendant.

The defendant went to trial, denying the allegations. The trial was, initially, to be a one-to-one credibility contest, with the defendant denying any sexual contact, the complainant claiming multiple incidents, and the trier of fact left to assess the credibility of the individuals. The prosecution, however, sought to introduce testimony of the defendant's sister,[2] that the defendant had engaged in multiple sexual activities with her years before, when she was a child. Such activities, including intercourse,[3] were alleged to have continued for several years, until the sister became pregnant after her marriage.

The trial court, deciding the issue of admissibility, commented on the record that, although past Michigan precedent did not support the admission of this testimony, the court believed that *VanderVliet* "open[ed] the door considerably more," and would allow for admission. The jury therefore was faced not with a one-to-one credibility contest, but, rather, with a parade of allegations of repulsive and horrific acts of incest totally unrelated to the case at hand.[4]

Lacking a coherent and substantial basis to support admission of this evidence, the majority instead

---

[2] There is some dispute in the record whether the individual was the defendant's sister or half-sister. For simplicity's sake, she will be referred to as simply the defendant's sister.

[3] There were no charges of intercourse between the defendant and the complainant daughter.

[4] Which is not to dispute the seriousness of the charges that were present in the instant case.

undertakes a strained effort to extend what might arguably be a basis for a very limited line of questioning into a purported reason to admit wholesale every allegation against the defendant that the witness could present, regardless of how unrelated it might be to the charges at hand. I find this reasoning to be incorrect, even under the standard enunciated in *VanderVliet*. Further, I find it to be only a rather transparent attempt to reach a desired conclusion, with little consideration of the effect such a short-sighted endeavor might have on our law of evidence.

The test brought to us by *VanderVliet* is:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*Id.* at 55.]

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Under the *VanderVliet* standard, the prosecution and the majority have failed to point to a proper pur-

pose under the first prong, and I therefore conclude that the evidence should not have been admitted.[5]

II

The majority finds that the sister's testimony would have been admissible to rebut the defense theory of fabrication relating to the custody dispute, citing *VanderVliet*. Accepting the majority's stated purpose, however, does nothing to lead me to a conclusion that the evidence should have been admitted. Rather, the purpose as stated by the majority clearly indicates that the great majority of the evidence admitted was neither necessary nor appropriate to achieve any proper purpose, and could only serve to inject into the proceedings the sort of prejudice MRE 404(b) specifically seeks to avoid.

Had the sister been permitted to testify that she told the mother about the alleged abuse suffered at the defendant's hands immediately before the mother's questioning of the victim, perhaps this testimony would have "corroborated" the testimony regarding the timing of the mother's questions, or at least provided an inference of credibility for the mother. In view of the defendant's attack on the mother's credibility, this might have been permissible.[6] This point, however, is the farthest the trial

---

[5] I pause to note that this evidence was also unnecessary. The trial judge indicated on the record that he believed the complainant's testimony. The record reveals the testimony was quite credible and firm. There was no need for the prosecution to seek to introduce such prejudicial material as the sister's testimony, or for the trial court to allow it, in order for a just result to be reached.

[6] Note that the defendant's attack on the victim's credibility was derivative of his attack on the mother's credibility. Both concerned the timing of the mother's questions and the coinciding custody dispute. Hence, the

court could legitimately proceed in admitting evidence to support the testimony regarding the timing.

The remaining testimony regarding the various acts allegedly performed by the defendant on his sister, however, should not have been admitted. Such testimony corroborated only the testimony of the daughter regarding the abuse claimed by her, and did so only by the inference that even the majority agrees is prohibited by MRE 404(b), that the defendant acted in accordance with a propensity to commit such crimes.

With respect to this testimony, I tend to think that the so-called proper corroboration of the victim's testimony is gained precisely by presenting the improper inference of criminal propensity to the jury. While the timing of the allegations by the sister might offer some insight into the reason the mother chose the particular moment she did to question her daughter, the testimony being corroborated by the substance of the allegations admitted into evidence is that of the abuse, not of the timing of the questions. The fact that there were allegations recently made supports the mother's otherwise inexplicable decision to suddenly raise the abuse question with her daughter. Where this decision is subject to attack, such support is permissible. The substance of the allegations, however, as described in detail by the witness, and admitted by the trial court, does nothing to address this issue of timing, and serves only to suggest, inappropriately, that the defendant's nature was one prone to deviant sexual acts.

---

proper purpose for which the sister's testimony could have been allowable would be limited to those questions regarding timing.

Even if I were to agree with the evidence being admissible for this purpose, I would be compelled to apply the third prong of *VanderVliet*, an analysis of probative value versus unfair prejudice. I find the majority's effort in this regard to be only a passing mention of the necessary test, with no sign of its application. Indeed, as noted, even if some evidence were admissible for this limited purpose, would it all be necessary? A rebuttal of the allegation concerning the timing of the mother's questions to the victim could have been accomplished with no more than the admission of testimony regarding the sister having informed the mother of past abuse. This would have served to make the jury aware of the reason behind the mother's questions, with no need for further specific allegations. Instead, the trial court allowed the daughter to testify about specific allegations at length. I find the majority too willing to stretch to meet the first prong of *VanderVliet*'s test, and disagree with its apparent reduction of the third prong of the test to merely a restatement of the first prong.

The majority makes much of the distinction that the first prong of MRE 404(b) is "inclusionary" rather than "exclusionary." Under this view, it is presumed that all purposes previously in existence or later invented are "proper purposes," provided they do not fall within the prohibited category of evidence of criminal propensity. I do not purport to take issue with the various authorities who have spoken about this feature in regard to the similar federal rule of evidence. I do note, however, that this view arrives only lately to Michigan jurisprudence.[7] More importantly, I

---

[7] In support of this statement, in *People v Engelman*, 434 Mich 204, 212-

note that the "inclusionary" nature as cited refers to the *purposes*, other than to suggest the impermissible character inference, not to the substance of the evidence itself. Whatever evidence is offered must be able to withstand an evaluation for a proper purpose, even under this "inclusionary" view. Only the evidence that actually serves such a purpose may be admitted.

In *People v Engelman*, 434 Mich 204; 453 NW2d 656 (1990), while the Court was unanimous in finding the admission of a photograph of the defendant, standing

---

213; 453 NW2d 656 (1990), the majority offered citations of the treatises of McCormick, Evidence (3d ed), § 190, p 558, and 2 Weinstein, Evidence, ¶ 404[8], p 404-52, again, that both esteemed sources, as well as to a 1938 law review article that makes its return in the majority's view here, Stone, *The rule of exclusion of similar fact evidence: America*, 51 Harv L R 988 (1938).

Of course, such historical inquiries are complicated by the various forms of the rules of evidence that have been subsequently adopted, as well as by *VanderVliet's* purported usurpation of this area of law. Nonetheless, I too will journey back some sixty-plus years to find a telling reference previously cited as "enlightening" by this Court in *People v Dean*, 253 Mich 434, 437; 235 NW 211 (1931), where the Court found erroneous the admission of proof of sexual acts with persons other than the victim in a case similar to that at bar:

> In crimes involving *sexual offenses* the courts have seemed readier to admit prejudicial evidence for such purposes as showing an "adulterous disposition." But the whole problem of other crimes seems to be a matter of reaching a convenient balance between the necessity of obtaining proof and the danger of unfair prejudice. A relaxation in favor of admitting the evidence in this one situation, then, indicates that the courts are willing to give more weight to a criminal record of this sort. Unless we can admit a greater relevancy or a stronger social need of protection, there seems no fair reason for the distinction. Two recent cases show that it is being abandoned. [Note, *Evidence—other crimes*, 29 Mich L R 473, 480 (1930), citing *Wentz v State*, 159 Md 161; 150 A 278 (1930), and *Doss v State*, 156 Miss 522; 126 So 197 (1930) (emphasis in the original).]

It is unfortunate that the Court today returns to a predictable path based more on the nature of the crime alleged than on any "fair reason."

naked near a partially nude minor female, to have been erroneous when he was on trial for an unrelated charge of criminal sexual conduct with a young male, we split four to three on the rationale. Nonetheless, the majority's opinion, cited for this proposition, found it necessary to exhaust the list of reasons found in the rule, but declined to search high and low for others, in finding the evidence not to be admissible for any proper purpose under existing precedent.

Therein, quite simply, lies my problem with the majority's conclusion. Previously, we have required a proper purpose, regardless of the "inclusionary" nature of the rule, to be one that is acceptable on its own footing, rather than being merely a derivative of the disallowed purpose of showing propensity. The exceptions listed in the rule are well grounded and supported in our precedent. Indeed, many were created by statute long before the current Rules of Evidence were adopted.[8] I therefore cannot agree with the idea that merely by acknowledging the rule's nature, we must open the door to any evidence presented, without requiring that *all* such evidence admitted serve some purpose other than seeking to prove criminal propensity, regardless of how disgusting we might find such purported propensity. Where the majority refuses to truly acknowledge that in fact it is extending the scope of proper purposes under MRE 404(b) to apply in a fashion so as to permit a proper purpose for any single question to bootstrap into evidence the answers to all arguably related

---

[8] See, e.g., *People v Dean*, n 7 *supra*, construing 1927 PA 175, ch 8, § 27 (Code of Criminal Procedure), 1929 CL 17320; MCL 768.27; MSA 28.1050, which lists purposes substantially identical to those found in MRE 404(b).

questions, no matter how irrelevant or prejudicial, I cannot agree.

The majority's decision is not supported by the Michigan Rules of Evidence, our prior case law, or the facts of this case. The sister's testimony was neither offered nor admitted for a proper purpose. I would find the trial court's admission of the testimony to be error, and affirm the result of the Court of Appeals.[9]

BRICKLEY and KELLY, JJ., concurred with CAVANAGH, J.

---

[9] There being no proper purpose for the evidence to be admitted under MRE 404(b), I need not proceed to an analysis of the probative versus prejudicial nature of the testimony. I note however, that the majority seems to do no more in this area than mention the prong regarding it. Under the majority's view, it seems a proper purpose is sufficient to carry the evidence past any prejudicial weighing, despite the requirement that such a factor be considered.

I also note that while I dissented in *VanderVliet*, and find the confusion of the trial court in this case to support my view that the majority's decision in *VanderVliet* was both unwise and unnecessary, it is not those concerns that move me to write today. Rather, in the majority's view today, I see an evisceration of the test of *VanderVliet*, and its reduction to a mere conclusory formality, wherein appellate courts will not have an appropriately limited role, but no functional role whatsoever preventing the erroneous admission of irrelevant and prejudicial evidence.