# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JAMES KIRK PARISH,

       Defendant-Appellant.

UNPUBLISHED
June 11, 2015

No. 321329
Cass Circuit Court
LC No. 12-010293-FC

Before: HOEKSTRA, P.J., and O'CONNELL and MURRAY, JJ.

PER CURIAM.

Defendant, James Kirk Parish, appeals as of right his jury trial convictions for two counts of First-Degree Criminal Sexual Conduct (CSC I), MCL 750.520b(1)(a) (sexual penetration, person under 13), and two counts of Second-Degree Criminal Sexual Conduct (CSC II), MCL 750.520c(1)(a) (sexual contact, person under 13). The trial court sentenced defendant to concurrent sentences of 25 to 50 years' imprisonment for CSC I, and 71 months to 15 years' imprisonment for CSC II. We affirm.

In 2012, the victim disclosed to her mother that defendant had sexually assaulted her in 2007 and 2008, when she was five or six years old. At trial, the victim testified to defendant's acts of criminal sexual conduct, and her mother testified to the circumstances surrounding the victim's initial disclosure of the abuse. An officer who interviewed defendant testified regarding defendant's post-examination admission that he inappropriately touched the victim on two occasions.[1] And, a child psychology expert testified to the phenomena of delayed disclosure among sexual abuse victims, as well as the tendency of abusers to minimize their abuse and prevent victim disclosure through threats and guilt. The jury convicted defendant as previously described.

---

[1] The officer actually administered a polygraph examination to defendant, but the jury was not apprised that the interview was in the context of a polygraph.

-1-

On appeal, defendant challenges the trial court's admission of the police officer's testimony regarding defendant's admission that he twice inappropriately touched the victim, arguing that his waiver of *Miranda*[2] rights was not knowing and intelligent. We review the trial court's decision to admit or exclude evidence for an abuse of discretion, *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998), and review de novo questions of law regarding whether a rule precludes the admission of evidence, *People v Washington*, 468 Mich 667, 670-671; 664 NW2d 203 (2003).

We evaluate whether defendant's waiver was knowing and intelligent by the totality of the circumstances surrounding his waiver. *People v Ray*, 431 Mich 260, 276; 430 NW2d 626 (1988). The totality of the circumstances includes defendant's "age, experience, education, background, and intelligence, and whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *People v Cheatham*, 453 Mich 1, 27; 551 NW2d 355 (1996) (opinion by BOYLE, J., with BRICKLEY, C.J., and RILEY, J., concurring in whole, and WEAVER, J., concurring in all but Part III) (citation omitted). A waiver is knowing and intelligent when a preponderance of the evidence establishes that defendant "understood that he did not have to speak, that he had the right to the presence of counsel, and that the state could use what he said in a later trial against him." *Id.* at 29.

We initially note that defendant does not argue that he lacked capacity to comprehend any of the information communicated to him by the administering officer and contained within the waiver form, *id.* at 31, and nothing about defendant's age, experience, education, background, or intelligence suggested his inability to understand the warnings given to him, the nature of his rights, or the consequences of waiving them, *id.* at 27. Defendant was 50 years old at the time of his waiver, and had completed high school and taken some college classes. He had no history of drug abuse, alcohol abuse, or treatment for mental illness. In fact, defendant initialed and signed that waiver form, which "in particular is strong evidence that the waiver was valid." *Id.* at 31 (citation omitted).

Defendant instead argues that he is entitled to relief because the waiver form itself used small and blurred font, lacked explanatory headings, and failed to reference in the waiver section what rights were being waived. None of these claims has merit. The font of the waiver form is perfectly legible, and the waiver form had bold, capitalized subheadings and beneath each of these headings the form contained sufficient detail to apprise defendant of the rights implicated and the consequences of waiving those rights. Further, the administering officer read defendant the rights and waivers contained on the form and received defendant's initials and signature for the waiver, which is sufficient for a knowing and voluntary waiver. *Id.* Finally, the section clearly stated that the examinee understood his rights, understood that his statements may be

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

admitted in a court of law, understood that he had the right to an attorney's assistance, and understood that the statement was read to the examinee and the rights therein waived. Our Supreme Court has upheld the validity of *Miranda* waivers in circumstances far less indicative of the defendant's comprehension of the waiver. See *People v McBride*, 480 Mich 1047, 1047-1048; 743 NW2d 884 (2008). On the record herein, defendant has not shown that any alleged deficiencies in the waiver form or the statements of the administering officer rendered his waiver unknowing and unintelligent.

We further reject defendant's argument that his admissions were not knowing and intelligent because he was not accompanied by counsel to the polygraph testing site, and counsel was not present before, during, or after the examination. The record does not support that defendant sought counsel's presence or that officers prevented access to counsel. Indeed, five months before the polygraph examination, defendant told the administrating police officer that he "would have to consult with his attorney to get his 'OK' whether or not to take the polygraph examination." Moreover, as discussed above, the waiver form defendant signed advised defendant that he had the right to the assistance of an attorney at his request.

Reviewing the totality of the circumstances, we are satisfied that a preponderance of the evidence shows that defendant "understood that he did not have to speak, that he had the right to the presence of counsel, and that the state could use what he said in a later trial against him." *Cheatham*, 453 Mich at 29. Defendant's waiver was knowing and intelligent, and the trial court did not abuse its discretion in allowing the officer to testify to defendant's admissions. *Starr*, 457 Mich at 494.

Defendant next challenges the trial court's admission of the victim's mother's testimony that immediately before disclosing defendant's abuse, the victim asked "if he [defendant] was coming around anymore." The victim's mother testified that she responded, "it kind of doesn't look like that, but I don't know . . . ." Defendant objected at trial, and we review the trial court's decision to admit the testimony for an abuse of discretion. *Id*. We also review de novo questions of law surrounding whether a rule precludes the admissibility of evidence. *Washington*, 468 Mich at 670-671.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). A statement is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." MRE 801(a). Communications which contain no assertions and are incapable of being true or false are not statements, and therefore are not hearsay. *People v Jones (On Rehearing After Remand)*, 228 Mich App 191, 204-205; 579 NW2d 82 (1998). The victim's words did not contain an assertion, and are incapable of being true or false. Accordingly, they are not statements for the purposes of MRE 801(a), and cannot constitute hearsay under MRE 801(c). *Id*. The trial court thus did not abuse its discretion in properly allowing the victim's mother to testify to the victim's question. *Starr*, 457 Mich at 494.

Defendant next argues that his 25-year mandatory minimum sentence pursuant to MCL 750.520b(2)(b) violates the separation of powers doctrine. Defendant did not challenge the constitutionality of MCL 750.520b(2)(b) below, and therefore did not preserve the issue for appellate review. *People v Grant*, 445 Mich 535, 545, 553; 520 NW2d 123 (1994). We review for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999).

The Michigan Constitution provides that "[t]he powers of government are divided into three branches: legislative, executive and judicial[,]" and prohibits persons exercising powers of one branch from exercising powers belonging to another branch except as provided in the Constitution. Const 1963, art 3, § 2. Our Constitution expressly grants the Legislature some sentencing authority:

> The legislature may provide for indeterminate sentences as punishment for crime and for the detention and release of persons imprisoned or detained under such sentences. [Const 1963, art 4, § 45.]

MCL 750.520b(1)(a), the CSC I statute under which defendant was charged, provides a mandatory minimum sentence of 25 years' imprisonment in certain circumstances:

> (2) Criminal sexual conduct in the first degree is a felony punishable as follows:
>
> * * *
>
> (b) For a violation that is committed by an individual 17 years of age or older against an individual less than 13 years of age by imprisonment for life or any term of years, but not less than 25 years.

This Court and the Michigan Supreme Court have upheld the constitutionality of mandatory minimum sentences pursuant to the Legislature's broad sentencing authority. We have noted that "sentencing is the community's response to crime" and "[a]s such, the ultimate authority to provide for sentencing is constitutionally vested in the Legislature . . . ." *People v Babcock*, 244 Mich App 64, 68; 624 NW2d 479 (2000). Our Supreme Court has acknowledged the Legislature's authority to "impose restrictions on a judge's exercise of discretion in imposing [a] sentence," *People v Hegwood*, 465 Mich 432, 440; 636 NW2d 127 (2001), and the judiciary's corollary authority to "impose sentences and to administer the sentencing statutes *enacted by the Legislature*," *id.* at 436-437 (emphasis added).

Indeed, the Court has recognized that "there are offenses with regard to which the judiciary has no sentencing discretion . . . this is for the Legislature to decide." *People v Garza*, 469 Mich 431, 434; 670 NW2d 662 (2003). Hence, our Supreme Court has upheld, against separation of powers challenges, mandatory life sentences for first-degree murder and multiple-felony offenders. See *People v Hall*, 396 Mich 650, 657-658; 242 NW2d 377 (1976); *People v*

*Palm*, 245 Mich 396, 403-404; 223 NW 67 (1929).  The Legislature thus has the constitutional authority to eliminate sentencing discretion from the judiciary by enacting mandatory minimum sentences for certain offenses.  *Garza*, 469 Mich at 434.  Accordingly, the 25-year mandatory minimum at MCL 750.520b(2)(b) does not violate the separation of powers doctrine, and he is not entitled to resentencing.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell
/s/ Christopher M. Murray