# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 3, 2018

Plaintiff-Appellee,

v

No. 335670
Wayne Circuit Court
LC No. 16-004292-01-FC

JASON CONRAD STREATER,

Defendant-Appellant.

Before: GLEICHER, P.J., and BOONSTRA and TUKEL, JJ.

PER CURIAM.

Following a bench trial, the circuit court convicted defendant of first-degree arson, MCL 750.72, assault with intent to commit murder, MCL 750.83, torture, MCL 750.85, and unlawful use of a chemical irritant device causing serious impairment, MCL 750.200j(2)(d), for luring his girlfriend downstairs in their home by triggering a smoke detector, then dousing her with gasoline and setting her on fire. As a result of the crimes, the victim was permanently scarred and disfigured, and her voice permanently impaired due to a tracheotomy she needed for treatment. The trial court sentenced defendant to 30 to 60 years' imprisonment for his arson, assault, and torture convictions and 2 to 25 years' imprisonment for the use of a chemical irritant device conviction.

Defendant raises a number of issues: that the torture conviction cannot stand due to insufficient evidence; that the sentence imposed was improper, and in a related argument, that the trial judge should be disqualified and the case remanded to a different judge for resentencing; and that the presentence investigative report (PSIR) contained errors which should be corrected. We reverse the torture conviction. We also vacate the sentences imposed and remand for resentencing in accordance with *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017) (*Steanhouse II*), which had not been decided at the time of sentencing in this case. We will not remand to a different trial judge for resentencing as we find no basis for doing so. And finally, because on remand the trial court necessarily will have to recalculate the sentencing guidelines, it will have the opportunity to correct any issues with the PSIR if such issues continue to exist upon recalculation of the guidelines. Thus, we decline to further address that issue.

## I. TORTURE CONVICTION

On appeal, the prosecution concedes that defendant's conduct did not meet the statutory definition of torture and, as a result, concedes that the torture conviction cannot stand. The prosecution's concession is well taken. If sufficient evidence of each element of an offense is not introduced at trial, due process requires that the conviction not stand. *People v Hampton*, 407 Mich 354, 368; 285 NW2d 284 (1979).

The torture statute, MCL 750.85, provides, in relevant part:

(1) A person who, with the intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control commits torture and is guilty of a felony punishable by imprisonment for life or any term of years.

(2) As used in this section:

* * *

(b) "Custody or physical control" means the forcible restriction of a person's movements or forcible confinement of the person so as to interfere with that person's liberty, without that person's consent or without lawful authority.

Defendant did not forcibly cause the victim to come downstairs. He did not directly apply force to her to restrict her movements or to forcibly confine her to a single area. Rather, he lured her downstairs by setting off the smoke detector. At that point, the victim could have taken one of several different actions, none of which involved her forcible confinement. She was not physically forced downstairs into the kitchen. Instead, she woke up and went downstairs unrestrained and under her own power to investigate the smell. Thus, while defendant's actions constituted a number of serious crimes, torture was not one of them because there was no basis for finding that the custody or physical control element was met. We therefore reverse that conviction, and on remand the trial court shall dismiss that charge with prejudice.

## II. SENTENCING

Defendant argues that the sentences imposed were improper. Because the sentences were imposed prior to our Supreme Court's decision in *Steanhouse II*, the trial court was unaware of the sentencing framework established by that case.[1] *Steanhouse II* reaffirmed the principle set

---

[1] The timeline relevant to this case is as follows:

July 29, 2015: the Michigan Supreme Court decided *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

October 22, 2015: this Court decided *People v Steanhouse*, 313 Mich App 1; 880 NW2d 297 (2015) (*Steanhouse I*), aff'd in part and rev'd in part by *Steanhouse II*.

forth in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), that "the legislative sentencing guidelines are advisory in all applications." *Steanhouse II*, 500 Mich at 459.[2] In addition, *Steanhouse II* held that the sentencing standard to be applied by trial courts to departure sentences is the principle of proportionality enunciated in *People v Milbourn*, 435 Mich 630, 661; 461 NW2d 1 (1990). *Steanhouse II*, 500 Mich at 471.

The dissent observes that "*Steanhouse II* did not change any of the rules that applied to trial courts when defendant was sentenced[.]" However, *Steanhouse II* did significantly settle what was at that time a highly unsettled state of the law. This Court's opinion in *Steanhouse I* already had issued. But so had *Masroor*. See note 1, *supra*. And *Masroor* had advocated a significantly different approach to proportionality review and had sought a conflict panel regarding *Steanhouse I* pursuant to MCR 7.215(J). While this Court declined to order a conflict panel, our Supreme Court granted leave in *Steanhouse I* and *Masroor* and consolidated the two cases. Such was the state of the law at the time of sentencing in this case.

In *Steanhouse II*, the Supreme Court resolved the conflict between *Steanhouse I* and *Masroor* by adopting parts of *Steanhouse I* and rejecting other parts of *Steanhouse I*. Importantly, it expressly repudiated "dicta in our proportionality cases [that] could be read to have 'urg[ed] that the guidelines should almost always control[.]' " *Steanhouse II*, 500 Mich at 474 (citations omitted). Additionally, *Steanhouse II* reaffirmed that "the key test is whether the

---

November 24, 2015: this Court decided *People v Masroor*, 313 Mich App 358; 880 NW2d 812 (2015), aff'd in part and rev'd in part by *Steanhouse II*.

May 25, 2016: Michigan Supreme Court granted leave to appeal in *Steanhouse I* and *Masroor* and consolidated them for argument and submission. *People v Steanhouse*, 499 Mich 934 (2016).

August 30, 2016: Defendant found guilty after a trial.

September 22, 2016: Defendant sentenced.

July 24, 2017: the Michigan Supreme Court decided *Steanhouse II*, 500 Mich 453, affirming in part, reversing in part, and remanding.

December 5, 2017: this Court decided *People v Steanhouse (On Remand)*, 322 Mich App 233; 911 NW2d 253 (2017) (*Steanhouse III*).

[2] At sentencing in this case, the trial court commented that although there previously had been sentencing guidelines, there were "now no guidelines." As discussed more fully below, this case would have to be remanded for consideration of the principle of proportionality as set forth in *Steanhouse II* no matter what, but we note that the trial court's formulation, whether it was due to simply misunderstanding *Lockridge* or to an inartful expression of the fact that the guidelines are no longer mandatory, was incorrect as stated. "[T]he guidelines 'remain a highly relevant consideration in a trial court's exercise of sentencing discretion' that trial courts 'must consult' and 'take . . . into account when sentencing.' " *Steanhouse II*, 500 Mich at 474-475, quoting *Lockridge*, 498 Mich at 391.

sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Id.* at 475. Thus, "[r]ather than impermissibly measuring proportionality by reference to deviations from the guidelines, our principle of proportionality requires 'sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Id.*, quoting *Milbourn*, 435 Mich at 636. Indeed, even today, the question of "to what extent the sentencing guidelines should be considered to determine whether the trial court abused its discretion in applying the principle of proportionality under [*Steanhouse II*]" is in fact an unsettled question, causing the Supreme Court to consider whether to grant leave to answer it. *People v Dixon-Bey*, ___Mich ___ (Docket No. 156746) (2018).[3]

The net effect of all of this is that, at the time of sentencing, the entire sentencing framework was unsettled. Under these circumstances, we think the proper approach is to vacate the sentence and permit the trial court to articulate its rationale for why the principle of proportionality as articulated in *Steanhouse II* and *Milbourn* justifies the sentence it imposes, rather than our doing so in the first instance, as the dissent would have it. Contrary to the dissent, this is not a *Crosby*[4] remand; we are remanding because the contours of the principle of proportionality and their relation to the guidelines were changed in some respects by *Steanhouse II*, and we think the trial court should first have the opportunity to consider them before its decision is reviewed for error.[5] On remand, the trial court must properly calculate the guidelines

---

[3]The dissent bases its analysis almost exclusively on the sentence's departure from the guidelines' recommended range rather than whether it is proportionate to the seriousness of the matter. The dissent states, "A common thread in the line of sentencing cases both before and after *Lockridge* is that a court may not depart from the guidelines range based on factors already taken into account by the guidelines unless the court articulates a legitimate reason for doing so." The dissent's approach seems to fly in the face of *Lockridge*'s holding that "[w]e also strike down the requirement in MCL 769.34(3) that a sentencing court that departs from the applicable guidelines range must articulate a substantial and compelling reason for that departure." *Lockridge*, 498 Mich at 364-365. The dissent's analysis is based almost entirely on the fact that the sentence departed from the guidelines or, in the dissent's view, that the factors at issue already were considered by the guidelines, rather than whether the sentences were proportionate. We have serious doubts about the dissent's approach to this issue, but in light of our disposition of the case need not decide that issue.

[4] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

[5] We note that this Court's opinion in *Masroor*, which our dissenting colleague joined, considered noteworthy the fact that "[n]either trial nor appellate counsel had the benefit of *Lockridge* when they formulated their objections to defendant's departure sentences." *Masroor*, 313 Mich App at 371. We read the point cited from *Masroor* as supporting the proposition that parties, and by implication, a court, should in the first instance have an opportunity to apply a legal principle which it has not had a fair opportunity to apply to ongoing litigation, and which renders the law unclear. Here, of course, the trial court had not "had the benefit of [*Steanhouse II*] when it formulated" its sentence. This was particularly significant as one of the issues on

range, of course without reference to the now-vacated torture conviction. The trial court must then proceed to resentence defendant in accordance with the principle of proportionality as set forth in *Steanhouse II* and *Milbourn*, and must provide its reasons for the sentence imposed so that reviewing courts may engage in appropriate review. See *Steanhouse II*, 500 Mich at 476; *People v Smith*, 482 Mich 292, 304-305; 754 NW2d 284 (2008). Because any review would be for an abuse of discretion, see *Steanhouse II*, 500 Mich at 471, and "[a]t its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome," *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003), the trial court must provide reasons for why its particular decision is reasonable. In that regard, it may be helpful for the trial court to discuss why it views its decision as more reasonable than other alternatives which themselves also could be deemed reasonable. However, none of this should be taken by the sentencing court as requiring any particular procedure other than a proper calculation of the guidelines, a proper consideration of the principle of proportionality, and a sufficient statement of reasons so that any sentence imposed may be properly reviewed on appeal.

## III. JUDICIAL DISQUALIFICATION

Defendant contends that resentencing should be assigned to a different judge as the current judge would have difficulty setting aside her previously expressed views. We disagree.

In deciding whether resentencing should occur before a different judge, this Court considers:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997) (quotation marks and citations omitted).]

In cases in which the trial court's errors during sentencing stem primarily from an "incorrect understanding of the new sentencing structure that now exists . . . and not to any prejudices or improper attitudes regarding this particular defendant," reassignment is unwarranted. *People v Hegwood*, 465 Mich 432, 440 n 17; 636 NW2d 127 (2001). However, "[a] case should be assigned to a different judge if it would be unreasonable to expect the trial judge, given her handling of the matter, to be able to put previously expressed findings out of mind without substantial difficulty." *People v Pillar*, 233 Mich App 267, 270-271; 590 NW2d 622 (1998).

---

which our Supreme Court granted leave was "what standard applies to appellate review of sentences following the decision in [*Lockridge*]." *Steanhouse*, 499 Mich at 934.

The trial judge here committed no error cognizable at this stage of the proceedings, nor has any finding or statement that she made been determined to be erroneous. Rather, we are remanding for resentencing only because *Steanhouse II* clarified the sentencing regime *after* sentencing had taken place. Thus, this case is one step removed even from *Hegwood* because the sentencing judge did not and obviously could not have had an "incorrect understanding of the new sentencing structure which now exists" as a result of *Steanhouse II*, as *Steanhouse II* had not yet been decided at sentencing. We do not determine that any views or findings must be rejected on remand as the trial court has not yet articulated its reasoning in applying the principle of proportionality with the benefit of *Steanhouse II*. Thus, there is no basis for concluding in any respect that the trial judge should not handle the resentencing, let alone a basis for overcoming the "heavy presumption of judicial impartiality." *People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999).

Nonetheless, the dissent goes on to argue for reassignment to a different judge, stating that "given the trial court's undisguised loathing of defendant, the court is unlikely to put aside its views and sentence him on a clean slate."[6] The dissent also states that "reassignment is necessary to preserve the appearance of justice. Defendant committed a terrible crime. But by calling defendant a 'monster' and a predator the trial court has signaled that it finds him unworthy of the balanced consideration required by *Milbourn*."

In arguing for the recusal of the trial judge on remand, the dissent cites *Commonwealth v Spencer*, 344 Pa Super 380, 399; 496 A2d 1156 (1985) (SHOYER, J., concurring), for the proposition that "[t]he sentencing judge should appear as the fountainhead of justice, not the spirit of revenge." Setting aside that *Spencer* (a concurring opinion no less) is obviously not controlling in a Michigan court, the level of generality of the quoted statement is both non-objectionable and of little guidance; we simply disagree that the trial judge here displayed overt bias and partiality.

We also note that the dissent avoids saying anything about what the sentencing judge actually said in in *Spencer*. The defendant in *Spencer* was a sixteen year old who, despite being a juvenile, was being prosecuted as an adult. *Spencer*, 344 Pa Super at 388-390. He had a history of arrests beginning at age 13, and from the ages of 15 and 16 was convicted twice for burglary, as well as theft and attempted burglary. In sentencing the defendant, the trial judge in *Spencer* stated:

> [A]fter reviewing in detail the facts concerning this crime, once again stating that it is one of the most despicable crimes I have seen in six years on the bench, I feel that the defendant as a result of his activity has forfeited his right to exist in this

---

[6] Although the dissenting judge states that she "will not presume to read the trial court's mind," the only basis for finding that the trial judge here "loathed" defendant would in fact be reading the trial judge's mind. The trial court did consider the nature of the offenses and the impact of the crimes on the victim, but considering such factors is entirely appropriate and thus can in no way be deemed to constitute personal animus towards a defendant.

community, on the street at least, and that the elderly of this City must be protected from animals such as this. And I shouldn't use the term "animals" because, as I have said, it denigrates the animal kingdom when referring to people like this.

If there was ever a case where the death penalty should be imposed, I would gladly pull the switch on you, Chief. I can't think of anything worse that you could do to human beings than what you did to these elderly people. And you consistently did it. You went back and went back. It wasn't an isolated instance.

You took advantage of people on their death beds. I think the youngest victim was 79. The oldest was 89, who subsequently died as a result of your activity. But that's not the case before me. That's just another one of your little asides.

Elderly people in this City must be protected from animals like you. When you get out of prison, you are going to be part of that elderly, I hope anyhow.

Thus, the sentencing judge in *Spencer* (1) compared the defendant unfavorably to animals; (2) advocated for the death penalty for the defendant and would have gladly carried it out personally; (3) referred to the defendant with the derogatory name "Chief"; (4) and expressly hoped that the defendant would be elderly when released from prison.

By contrast, the sentencing judge here expressed her view of defendant's relationship with the victim; noted that the victim was, in the judge's opinion, vulnerable psychologically; noted the impact on the victim's daughter of seeing her mother burned and scarred, with lifelong disfigurement; and once referred to defendant as "a monster." Other than the monster reference, none of the trial court's comments is even arguably improper as they all relate to appropriate considerations at sentencing. This Court has stated that "[t]he impact of a crime on a victim is a valid sentencing consideration." *People v Jones*, 179 Mich App 339, 342; 445 NW2d 518 (1989). "We do not believe that the judge's consideration of the impact of the crime on the victim amounted to a prejudice or bias that deflected him from making a sentencing decision within" proper considerations. *Id.* at 343. This Court also has noted that "[s]entencing is the time for comments against felonious, antisocial behavior recounted and unraveled before the eyes of the sentencer. At that critical stage of the proceeding when penalty is levied, the law vindicated, and the grievance of society and the victim redressed, the language of punishment need not be tepid." *People v Antoine*, 194 Mich App 189, 191; 486 NW2d 92 (1992). While it may have been preferable for the judge to refrain from using the "monster" label, had the court simply said that defendant's crime was "monstrous," rather than saying that defendant himself was a "monster," no plausible argument could have been made that the judge had acted improperly. Indeed, Michigan courts at all levels have, in different cases, referred to particular defendants' actions as "monstrous," without anyone challenging those judges' impartiality. See *People v Starr*, 457 Mich 490, 499, 577 NW 2d 673 (1998) (defendant's acts were "depraved" and of "monstrous repugnance"); *People v Freese*, unpublished per curiam opinion of the Court of Appeals, issued April 25, 2017 (Docket Nos. 329673 & 332141), p 7 (affirming upward departure from sentencing guidelines where trial court stated that it "conclude[d] that this activity over such a period of time is nothing less than monstrous"); *People v Nealy*, unpublished per curiam opinion of the Court of Appeals, issued July 19, 2002 (Docket No. 228703), pp 6-7

(the trial court's statement that "[t]he victims in this case . . . have certainly endured as monstrous a crime as you can imagine" was part of the basis for this Court upholding the upward departure from sentencing guidelines). Nonetheless, the distinction between a defendant acting in a "monstrous" manner and being a "monster" is not sufficiently strong as to require that a case be reassigned from a trial judge who used the latter term.

Given this record, we find no basis for concluding that the strong presumption that the trial court acted improperly has been overcome. *Wells*, 238 Mich App at 391. We decline to order the case assigned to a different judge on remand.

## IV. CORRECTION OF PSIR

Defendant argues that the trial court erred in failing to correct the PSIR after stating on the record that it would do so based on various guideline calculations. We find it unnecessary to decide this issue.

It is "imperative" that a "PSIR accurately reflect the sentencing judge's determination regarding the information contained in the report" because the department of corrections relies on and uses information in the report when making critical decisions regarding a defendant's status. *People v Lloyd*, 284 Mich App 703, 705-706; 774 NW2d 347 (2009). "At a sentencing hearing, either party may challenge the accuracy or relevancy of information contained in the [report]." *Id.* at 705, citing MCL 771.14(6). " 'If the court finds on the record the challenged information is inaccurate or irrelevant, that finding shall be made a part of the record, the presentence investigation report shall be amended, and the inaccurate or irrelevant information shall be stricken accordingly before the report is transmitted to the department of corrections.' " *Lloyd*, 284 Mich App at 705, quoting MCL 771.14(6).

Because we are remanding for resentencing, we trust that the trial court will correct any error with the PSIR at that time. Indeed, the prosecution has stated on appeal that it has "no objection to a direction for administrative correction of the PSIR."

## V. CONCLUSION

We reverse defendant's conviction for torture and remand for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Jonathan Tukel