# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

CARLTON JAMES RAPOZA, JR.,

       Defendant-Appellant.

UNPUBLISHED
June 7, 2018

No. 339846
Kalkaska Circuit Court
LC No. 16-003931-FC

---

Before: O'CONNELL, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Following a jury trial, defendant, Carlton James Rapoza, Jr., was convicted of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b) (sexual penetration [penis/anus] with victim younger than 13 and defendant 17 or older), and one count of sodomy, MCL 750.158. The trial court sentenced Rapoza as a fourth habitual offender, MCL 769.12, to concurrent prison terms of 47 to 75 years for each CSC-I conviction and 6 to 25 years for the sodomy conviction. Rapoza appeals as of right. We affirm.

## I. FACTUAL BACKGROUND

Rapoza had parenting time with his son on a regular basis. In late January 2016, the boy's mother noticed him in bed with a blanket pulled over his head when he should have been sleeping. When she pulled back the blanket, she saw the child playing with the tag on a stuffed animal in a way that appeared odd to her. She asked him what he was doing and why. The child initially said, "Nothing," and "I can't tell you." The child's mother insisted that he was doing something because he was not asleep. The child told her that Rapoza "sticks his private part in his butt." The child's mother asked him how it happened, and he told her that Rapoza put "him on his lap and puts his private part in his butt" when the other children were not around.

The next day, the child's mother took him in for a medical examination by Physician's Assistant Michelle Green. Green was unable to diagnose the child because he would not tell her anything. Green recommended that the child's mother take him in for a more specialized examination by a pediatrician. Dr. Cynthia Smith, a pediatrician with experience in interviewing children who are alleged victims of sexual abuse, examined the child. During the examination, the child told Dr. Smith that Rapoza pulled his pants down and "put his wiener . . . sticked it in."

-1-

Using an anatomically correct doll at trial, the child identified the penis and the anus as private parts. The child testified that Rapoza touched his private parts and "put him wiener in my butt." The child testified that this happened at night in the summertime when everyone else in the house was asleep. According to the child, he told Rapoza that this was not a good idea, but Rapoza told the child he would be grounded if he did not comply. The child testified that Rapoza told him not to tell anyone. The child testified that he was afraid of Rapoza.

After the prosecution rested, the defense called Carly Bentley, a forensic interviewer. Bentley interviewed the child, and the forensic interview was recorded and videotaped. Bentley used open-ended questions regarding the allegations of sexual abuse. When Bentley asked the child about sexual abuse, what he told Dr. Smith, and if anyone ever asked him to keep a secret, the child responded that he did not know. The child denied wanting to talk to Bentley about anything. Bentley testified that it is not uncommon for children to "freeze up." Bentley said that the child's body language changed when she changed from neutral topics to sexual topics. His shoulders sunk, and he looked at the ground, suggesting that he was uncomfortable.

## II. ADMISSION OF HEARSAY TESTIMONY

### A. MRE 803A

Rapoza raises several issues regarding the admission of hearsay testimony under a hearsay exception. " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is generally prohibited and may only be admitted at trial if provided for in an exception to the hearsay rule. MRE 802. We review the trial court's decision to admit evidence for an abuse of discretion. *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). A trial court abuses its discretion when its decision "falls outside the range of principled outcomes." *People v Nicholson*, 297 Mich App 191, 196; 822 NW2d 284 (2012).

Rapoza first argues that the trial court abused its discretion by admitting hearsay statements that the child made to his mother under MRE 803A. He contends that the statements were inadmissible hearsay because they were not spontaneous but were the result of questioning by the child's mother. MRE 803A, the "tender years exception" to the hearsay rule, provides, in relevant part:

> A statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:
>
> (1) the declarant was under the age of ten when the statement was made;
>
> (2) the statement is shown to have been spontaneous and without indication of manufacture;
>
> (3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and

(4) the statement is introduced through the testimony of someone other than the declarant.

"MRE 803A generally requires the declarant-victim to initiate the *subject of sexual abuse*. The question of spontaneity, at its essence, asks whether the statement is the creation of the child or another." *People v Gursky*, 486 Mich 596, 613; 786 NW2d 579 (2010). Statements may be spontaneous if they "arise out of pure impulse[,]" they "are made as a result of prompt, plan, or questioning by a third party, yet are in some manner atypical, unexpected, or do not logically follow from the prompt[,]" or they follow from "open-ended and nonleading questions that include answers or information outside the scope of the questions themselves." *Id*. at 610-611. Questioning a child does not render the child's answers nonspontaneous. *Id*. at 614.

In this case, the child's mother found the victim awake in his bed with a blanket over his head and "flicking" or playing with the tag of a stuffed animal in what she found to be an unusual manner. She asked the child what he was doing and why, and the child told her that Rapoza had "put his private part in his butt." The child's mother asked him how it happened, and he told her that Rapoza "sticks him on his lap and puts his private part in his butt" when the other children were not around. Nothing in the mother's questions suggested that the child had been sexually abused or that Rapoza was involved, and the child's disclosure of sexual abuse was not the type of information that would be expected to come from the questions under these circumstances. Accordingly, the trial court did not abuse its discretion by concluding that the child's statements were spontaneous.

Rapoza also argues that the approximate six-month delay in disclosure was not excusable. Rapoza did not object on this ground at trial. We review unpreserved claims of error only to ascertain whether any plain error affected the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-765; 597 NW2d 130 (1999). Because Rapoza merely announces his position without providing any rationalization or factual support for this argument, it is considered abandoned. See *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). Nonetheless, the record does not support this argument. A delayed corroborative statement is admissible when the delay is "excusable as having been caused by fear or other equally effective circumstance[.]" MRE 803A(3). A "well-grounded fear of [the] defendant" can excuse a delay as long as nine months. *People v Dunham*, 220 Mich App 268, 272; 559 NW2d 360 (1996). The child's testimony established that the six-month delay in disclosure was motivated by his fear of Rapoza. Under these circumstances, Rapoza has not shown plain error.

### B. MRE 803(4)

Rapoza next argues that the trial court abused its discretion by admitting hearsay statements that the child made to Dr. Smith under the medical treatment exception to the hearsay rule, MRE 803(4), because the statements were not trustworthy and not reasonably necessary to diagnose and treat the effects of the alleged sexual abuse. He contends that Physician's Assistant Michelle Green had already examined the child and that any questions Dr. Smith asked were intended to elicit further statements to corroborate the child's statements to his mother.

MRE 803(4) provides an exception to the hearsay rule for statements made for the purpose of medical treatment or diagnosis. These statements are "admissible pursuant to MRE

803(4) if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care." *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011). "Particularly in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment." *Id.* A child's statements are admissible under MRE 803(4) "when the totality of circumstances surrounding the statements supports that they are trustworthy." *People v Duenaz*, 306 Mich App 85, 95; 854 NW2d 531 (2014). To determine whether a child's statements to a medical professional are trustworthy, this Court reviews those statements in light of the following factors:

> (1) the age and maturity of the declarant, (2) the manner in which the statements are elicited (leading questions may undermine the trustworthiness of a statement), (3) the manner in which the statements are phrased (childlike terminology may be evidence of genuineness), (4) use of terminology unexpected of a child of similar age, (5) who initiated the examination (prosecutorial initiation may indicate that the examination was not intended for purposes of medical diagnosis and treatment), (6) the timing of the examination in relation to the assault (the child is still suffering pain and distress), (7) the timing of the examination in relation to the trial (involving the purpose of the examination), (8) the type of examination (statements made in the course of treatment for psychological disorders may not be as reliable), (9) the relation of the declarant to the person identified (evidence that the child did not mistake the identity), and (10) the existence of or lack of motive to fabricate. [*People v Meeboer (After Remand)*, 439 Mich 310, 324-325; 484 NW2d 621 (1992) (citations omitted).]

"[E]vidence that the person identified as the assailant had the opportunity to commit the assault" can also "support the trustworthiness of the child's statements regarding a sexual assault and aid in the determination whether the statement was made for the purpose of receiving medical care." *Id.* at 326.

In this case, the child had just turned six years old when Dr. Smith examined him upon referral from Green. At trial, Dr. Smith testified that she asks children open-ended questions tailored toward medical treatment that enable her to obtain a complete picture of what occurred so that she can better diagnose physical injury. She looks for signs of injury, infection, and sexually transmitted diseases, as well as signs that a child needs counseling. When Dr. Smith examined the child in this case, he appeared nervous about answering her questions about who could touch his private parts, so Dr. Smith told him that "it was okay to tell doctors about those things so that we knew how to check him." The child then said that Rapoza told him to pull his pants down and not to tell anyone. Dr. Smith asked the child what else happened, and the child said that Rapoza pulled his pants down and "put his wiener . . . sticked it in." During the physical examination, Dr. Smith asked the child to show her where he was touched. The child pointed to the opening to his rectum and said, "My dad put him wiener inside my butt." Dr. Smith examined the child's rectum but found no signs of injury. She explained that the absence of physical symptoms, such as redness or scarring, is common when time has elapsed and that

injuries to the rectum begin to heal within 24 to 48 hours after an incident. The child's last possible contact with Rapoza before the examination was 11 days earlier.

These circumstances show that Dr. Smith's hearsay testimony was admissible. There was no evidence that Dr. Smith used leading questions during the examination. The child used childlike euphemisms for genital and anal areas. The examination was not initiated by the prosecution, the police, or CPS, but rather by Green, another medical professional. Dr. Smith performed a physical examination of the child's body. Although Dr. Smith stated that she would refer the child to counseling, if necessary, the examination was not psychological. The child identified Rapoza, and despite Rapoza's theory that the child's mother "coached" the child, no evidence was presented that the child had a motive to fabricate his statements. The totality of the circumstances supports the trial court's finding that the child's statements to the doctor were trustworthy and reasonably necessary for medical treatment and diagnosis. The statements were admissible under MRE 803(4), and the trial court did not abuse its discretion by admitting them.[1]

### III. *BRADY* VIOLATION

Rapoza argues that the prosecution's failure to produce Child Protective Service (CPS) reports showing that the child's mother previously alleged that another individual sexually abuse the child violated *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), and denied him his right of confrontation because the child's mother had already testified by the time defense counsel received the report. Rapoza did not raise the issues of a *Brady* violation or a denial of his right of confrontation in the trial court. Therefore, we review the unpreserved constitutional issues for plain error. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). To avoid forfeiture under the plain error rule, the defendant must demonstrate that an error occurred, the error was plain, and the plain error affected substantial rights. *Carines*, 460 Mich at 763. "The third prong requires a showing of prejudice, which occurs when the error affected the outcome of the lower court proceedings." *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015).

On appeal, Rapoza briefly refers to *Brady*, cites the *Brady* factors, and then asserts that the CPS reports "contained exculpatory evidence that should have been disclosed by the prosecution." He does not identify the allegedly exculpatory evidence. He then announces that he "was inarguably denied his right to confront [the victim's mother] with her false claims [of] sexual abuse made against other adults," without explaining how each of the factors is met or citing any authority establishing that the facts in this case amount to such a violation. Under these circumstances, we consider this issue abandoned. See *Matuszak*, 263 Mich App at 59.

Nonetheless, Rapoza's argument is without merit. "The Supreme Court of the United States held in *Brady* that 'the suppression by the prosecution of evidence favorable to an accused

---

[1] Additionally, the trial court provided the jury with a cautionary instruction at the time of Dr. Smith's testimony. The court instructed the jury that "these statements of [the child] that are going to be described to you are not evidence that they are true. They're just evidence that this is what the doctor heard. The questions the doctor asked during the course of her treatment."

upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014), quoting *Brady*, 373 US at 87. The three components of a *Brady* violation are that: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Chenault*, 495 Mich at 150. "The government is held responsible for evidence within its control, even evidence unknown to the prosecution[.]" *Id.* "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id* (quotation marks and citation omitted). "The question is whether, in the absence of the suppressed evidence, the defendant received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Chenault*, 495 Mich at 150-151 (quotation marks and citation omitted).

In this case, there was no *Brady* violation because the reports were not suppressed. The defense received the reports on the first day of trial. Moreover, assuming that the reports were somehow "favorable" to Rapoza under *Brady*, they do not meet the test of materiality. Rapoza asserted below that the reports could have been used to impeach the credibility of the child's mother. After having an opportunity to review the reports and hear argument from both parties, however, the trial court refused to allow Rapoza to cross-examine the child's mother about the reports because the court found the marginal probative value of the evidence substantially outweighed by the danger of unfair prejudice under MRE 403. Because the evidence was excluded for an appropriate reason, and because Rapoza has not challenged that evidentiary ruling on appeal, Rapoza has not shown that the result of the proceeding would have been different had the reports been disclosed sooner.

## IV. ONE-WAY WITNESS SCREEN

Rapoza argues that his rights to face-to-face confrontation and to the presumption of innocence were violated when the child testified from behind a one-way screen. Defense counsel stipulated to the use of the one-way witness screen during the child's testimony. Waiver is "the intentional relinquishment or abandonment of a known right. One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (quotation marks and citations omitted). "A stipulation constitutes a waiver of any alleged error[.]" *People v Eisen*, 296 Mich App 326, 328; 820 NW2d 229 (2012). This issue is waived, and there is no error for this Court to review.[2]

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Rapoza also raises a claim of ineffective assistance of trial counsel. To show ineffective assistance of counsel, the defendant must prove that counsel made an error and the error was prejudicial to defendant. *People v Pickens*, 446 Mich 298, 311, 314; 521 NW2d 797 (1994).

---

[2] Nonetheless, the arguments raised by Rapoza on appeal were addressed and rejected in *People v Rose*, 289 Mich App 499, 517-518; 808 NW2d 301 (2010).

That is, first, "the defendant must show that counsel's performance fell below an objective standard of reasonableness." *People v Russell*, 297 Mich App 707, 715-716; 825 NW2d 623 (2012) (quotation marks and citation omitted). This Court begins with a strong presumption that trial counsel's conduct fell within the range of reasonable professional assistance and requires that the defendant overcome the presumption that the challenged action or inaction constituted sound trial strategy. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *Russell*, 297 Mich App at 716. "Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable." *Id*. at 715-716 (quotation marks and citation omitted).

Rapoza announces a number of alleged errors in his counsel's performance, but he has failed to brief and develop arguments with respect to all but one of the alleged errors. An appellant abandons an issue when he merely asserts error without proper argument. *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001). Because Rapoza merely announces errors but fails to brief all but one of his arguments on appeal, he has abandoned those allegations of error. In addition, absent substantive analysis, he has failed to sustain his burden of showing that counsel's performance fell below an objective standard of reasonableness.

Rapoza has developed his argument that defense counsel performed deficiently by failing to call a second expert witness, Dr. Wayne Simmons. Rapoza moved for a *Ginther*[3] hearing in the trial court with respect to his claims of ineffective assistance of counsel, but he did not allege that trial counsel was ineffective by failing to call Dr. Simmons to testify. Therefore, this argument is unpreserved, and review is limited to mistakes apparent on the record. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014).

In this case, defense counsel informed the trial court that he was not going to call Dr. Simmons because his testimony would be cumulative to Bentley's testimony and defense counsel was concerned that the witnesses might contradict each other. "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *Russell*, 297 Mich App at 716. Rapoza has not overcome the strong presumption that counsel's decision to forgo Dr. Simmons's testimony was a reasonable strategic one. He has failed to demonstrate that he was denied the effective assistance of counsel.

## VI. CUMULATIVE EFFECT OF ERRORS

Finally, Rapoza argues that the cumulative effect of several minor errors can deprive a defendant of a fair trial. Because Rapoza has not established that any errors occurred, there can be no cumulative effect of errors that would merit reversal. See *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

We affirm.

/s/ Peter D. O'Connell
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan